# 22-6421

---

**IN THE**

*United States Court Of Appeals*

**FOR THE SECOND CIRCUIT**

———

**JOAQUIN GARCIA PINACH,**

*Petitioner,*

– against –

**MERRICK B. GARLAND, United States Attorney General,**

*Respondent.*

———

ON PETITION FOR REVIEW FROM THE
BOARD OF IMMIGRATION APPEALS

---

## BRIEF FOR PETITIONER

---

Kyle Barron
Julie Dona
John DeBellis
THE LEGAL AID SOCIETY
199 Water Street, 3rd Floor
New York, NY 10038
(646) 988-1425

*Counsel for Petitioner*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ...................................................................1

JURISDICTIONAL STATEMENT ..............................................................2

STATEMENT OF THE ISSUES PRESENTED.........................................3

STATEMENT OF THE CASE.....................................................................3

SUMMARY OF THE ARGUMENT ..........................................................11

STANDARDS OF REVIEW .......................................................................14

ARGUMENT ...............................................................................................14

  I.  Kissing Between Teenagers Close in Age Is Not an Aggravated Felony Under the Immigration and Nationality Act....................................14

    A.  Sexual abuse under N.Y. Penal Law § 130.60(2) is a broad misdemeanor offense that sweeps in minor conduct, including consensual kissing between teenagers ...................................................................16

    B.  The INA's text, construed using the normal tools of statutory interpretation, unambiguously forecloses the Board from classifying a conviction under NYPL § 130.60(2) as an aggravated felony .............19

  II.  Even if the Statute Is Ambiguous as to Whether It Covers Kissing Between Teenagers, the Board's Interpretation Is Unreasonable and Is Arbitrary and Capricious.....................................................................31

    A.  The Board's interpretation is not reasonable at *Chevron* Step Two because it construes sexual abuse of a minor as covering a "broad range of sexual misconduct" without providing a limiting standard .................32

    B.  The Board acted in an arbitrary and capricious manner when it concluded that *Rodriguez v. Barr* was dispositive without undertaking its own analysis...................................................................................36

CONCLUSION ............................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT & T Corp. v. Iowa Utilities Bd.*,
525 U.S. 366 (1999)...............................................................................31, 32

*Brathwaite v. Garland*,
3 F.4th 542 (2d Cir. 2021) .................................................................32

*Carachuri-Rosendo v. Holder*,
560 U.S. 563 ......................................................................................25, 27

*Chevron U.S.A., Inc. v. Natural Res. Def. Council*,
467 U.S. 837 (1984).....................................................................31, 32, 37

*Cuthill v. Blinken*,
990 F.3d 272 (2d Cir. 2021) .................................................14, 24, 28

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
140 S.Ct. 1891 (2020)........................................................................36, 39

*Esquivel-Quintana v. Sessions*,
137 S. Ct. 1562 (2017)..............................................................*passim*

*Estrada-Espinoza v. Mukasey*,
546 F.3d 1147 (9th Cir. 2008) ...........................................................22, 32

*Flores v. Barr*,
791 F. App'x 222 (2d Cir. 2019) .............................................19, 31, 35

*Giacco v. Pennsylvania*,
382 U.S. 399 (1966)............................................................................35

*Husic v. Holder*,
776 F.3d 59 (2d Cir. 2015) .................................................................31

*James v. Mukasey,*
    522 F.3d 250 (2d Cir. 2008) .............................................................17

*Judulang v. Holder,*
    565 U.S. 42 (2011) ...........................................................................32

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) .........................................................................38

*Mathews v. Barr,*
    927 F. 3d 606 (2d Cir. 2019) ...........................................................20

*Mathis v. United States,*
    136 S. Ct. 2243 (2016) .....................................................................15

*In re Michael J.,*
    699 N.Y.S.2d 284 (App. Div., 1st Dep't 1999) ...............................17

*Moncrieffe v. Holder,*
    569 U.S. 184 (2013) ..........................................................15, 26, 36

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut.
    Automobile Ins. Co.,*
    463 U.S. 29 (1983) .....................................................................36, 39

*Mugalli v. Ashcroft,*
    258 F.3d 52 (2d Cir. 2001) ........................................................22, 31

*People v. Belfrom,*
    475 N.Y.S.2d 978 (Sup. Ct., Queens Cnty. 1984) ...........................17

*People v. Reyes,*
    76 A.D.3d 864, 908 N.Y.S.2d 14 (N.Y. App. Div., 1st Dep't 2010) ...............19

*People v. Rivera,*
    525 N.Y.S.2d 118 (Sup. Ct., Bronx Cnty. 1988) ..............................17

*Roberts v. Sea-Land Servs., Inc.,*
    566 U.S. 93 (2012) ............................................................................24

*Rodriguez v. Barr,*
    975 F.3d 188 (2d Cir. 2020) ......................................................*passim*

*In Re Rodriguez-Rodriguez*,
22 I. & N. Dec. 991 (BIA 1999) ................................................................*passim*

*Matter of Rodriguez-Rodriguez*,
22 I&N Dec. 991 (BIA 1999) ....................................................................*passim*

*Rotimi v. Holder*,
577 F.3d 133 (2d Cir. 2009) ..............................................................28

*S.E.C. v. Chenery Corp.*,
318 U.S. 80 (2022).................................................................36, 38

*Sessions v. Dimaya*,
138 S. Ct. 1204 (2018).........................................................25, 35

*Matter of Small*,
23 I&N Dec. 448 (BIA 2002) ...............................................10, 26

*Taylor v. United States*,
495 U.S. 575 (1990).................................................................*passim*

*Torres v. Lynch*,
578 U.S. 452 (2016) (J. Sotomayor, dissenting) ................................25

*United States v. Kirk*,
111 F.3d 390 (5th Cir. 1997) ..............................................29

*Vargas-Sarmiento v. U.S. Dep't of Justice*,
448 F.3d 159 (2d Cir. 2006) ..............................................14

*Varughese v. Holder*,
629 F.3d 272 (2d Cir. 2010) (per curiam) ........................................31

*Wala v. Mukasey*,
511 F.3d 102 (2d Cir. 2007) ..............................................14

*Yale–New Haven Hosp. v. Leavitt*,
470 F.3d 71 (2d Cir. 2006) ..............................................38

## Statutes

8 U.S.C. § 1101(a)(43)(A) ................................................................*passim*

8 U.S.C. § 1101(a)(43)(B) ....................................................14

8 U.S.C. § 1101(a)(47)(B)(i) ..................................................2

8 U.S.C. § 1227(a)(2)(A)(iii) ...........................................5, 14

8 U.S.C. § 1227(a)(2)(E)(i) .............................................5, 8

8 U.S.C. § 1229b(a) .......................................................6, 8

8 U.S.C. § 1231(b)(3)........................................................6

8 U.S.C. § 1252(a)(5) ........................................................2

8 U.S.C. § 1252(b)(2) ........................................................2

18 U.S.C. § 924(c) ..........................................................15

18 U.S.C. §§ 2241-2246 ...........................................*passim*

18 U.S.C. §§ 2251-2252 ....................................................15

18 U.S.C. § 3509(a) ..................................................*passim*

N.Y. Penal Law § 15.20(3) .................................................18

N.Y. Penal Law § 30.00 (2017) ............................................18

N.Y. Penal Law § 70.15(1) (2019) .........................................24

N.Y. Penal Law § 130.00(3) ...............................................17

N.Y. Penal Law § 130.05(3) ...........................................16, 19

N.Y. Penal Law § 130.55 ..............................................18, 19

N.Y. Penal Law § 130.60 ..................................................18

N.Y. Penal Law § 130.60(2) ..........................................*passim*

N.Y. Penal Law § 130.65(1) ..........................................*passim*

N.Y. Penal Law § 260.10(1) ................................................4

Vehicle Traffic Law § 1192.1 ..............................................4

v

**Other Authorities**

*An Overview Of Adolescent Sexual Development*, National Sexual
   Violence Resource Center, 2 (2014),
   https://www.nsvrc.org/sites/default/files/2014-
   01/saam_2014_overview-of-adolescent-sexual-development.pdf ....................29

Black's Law Dictionary 10 (7th ed. 1999) ...............................................................29

Black's Law Dictionary (11th ed. 2019) ...........................................................21, 26

Black's Law Dictionary 1375 (6th ed. 1990) ...................................................20, 34

National Institutes of Health, *Puberty and Precocious Puberty* (Dec.
   15, 2022), https://www.nichd.nih.gov/health/topics/puberty ...........................29

*New Students*, NYC Dep't of Educ. (Dec. 15, 2022),
   https://www.schools.nyc.gov/enrollment/enrollment-help/new-
   students ..............................................................................................................28

Theresa E. Senn et al., *Characteristics of Sexual Abuse in Childhood
   and Adolescence Influence Sexual Risk Behavior in Adulthood*, 36
   Archives Sexual Behav. (2007),
   https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2042031.) .............................30

## PRELIMINARY STATEMENT

In 1996, Congress amended the aggravated felony provision of "murder and rape" to include a third offense: sexual abuse of a minor. Lawful permanent residents, like petitioner Joaquin Garcia, who are found removable on this basis are subject to mandatory detention and deportation, with no opportunity to seek asylum or discretionary immigration relief.

In its unpublished decision in this case, the Board of Immigration Appeals declined to adhere to any "definitive standard" of sexual abuse of a minor. Instead, the Board relied on its characterization of the term as encompassing a "broad range of maltreatment of a sexual nature." It then used this characterization to conclude that the misdemeanor offense of sexual abuse under N.Y. Penal Law § 130.60(2) – which criminalizes conduct as minimal as a high school junior consensually kissing a high school freshman – categorically qualifies as a sexual abuse of a minor aggravated felony.

Based on this conclusion, the Board ordered the deportation of Mr. Garcia and denied him the opportunity to apply for discretionary relief. Having ordered him removed, U.S. Immigration and Customs Enforcement seeks to separate Mr. Garcia from his family and deport him to a country where he has not lived in over four decades.

1

This Court should reverse. The Board's determination that N.Y. Penal Law § 130.60(2) is a sexual abuse of a minor aggravated felony runs counter to the Immigration and Nationality Act's text and structure, and it is implausible as a matter of Congressional intent. And even if the statute did not unambiguously foreclose the Board's far-reaching interpretation, remand is required because the Board failed to adequately explain its reasoning or offer a discernible legal standard, shirking its duty to provide fair notice of which types of offenses fall within the aggravated felony provision and which do not.

## JURISDICTIONAL STATEMENT

An immigration judge at the New York (Varick) Immigration Court ordered Mr. Garcia removed on April 4, 2022. The Board dismissed Mr. Garcia's appeal on August 25, 2022, rendering the removal order administratively final. *See* 8 U.S.C. § 1101(a)(47)(B)(i). Jurisdiction for this petition arises under 8 U.S.C. § 1252(a)(5), and venue is proper under 8 U.S.C. § 1252(b)(2).

## STATEMENT OF THE ISSUES PRESENTED

1) Do traditional tools of statutory interpretation unambiguously foreclose the construction of "sexual abuse of a minor" under the Immigration and Nationality Act to include consensual kissing between teenagers close in age?

2) Is the Board's decision unreasonable because it fails to provide a limiting standard for the sexual abuse of a minor offense under the Immigration and Nationality Act?

3) Is the Board's decision arbitrary and capricious because it treated Mr. Garcia's arguments as "foreclosed" by *Rodriguez v. Barr*, where this Court deferred to the Board's determination that a separate and narrower felony statute constituted a sexual abuse of a minor aggravated felony?

## STATEMENT OF THE CASE

This petition arises from removal proceedings against Joaquin Garcia.[1]

Immigration Judge Margaret Kolbe ordered Mr. Garcia removed on April 4, 2022.

Special Appendix ("SPA") at 19. In an unreported decision by a single member,

the Board of Immigration Appeals upheld the removal order and denied Mr.

Garcia's motion to remand. (SPA 1-7). Mr. Garcia now seeks vacatur of the

Board's decision and a remand to the Board.

---

[1] The agency file in the underlying proceedings was incorrectly captioned Joaquin Garcia Pinach, even though "Pinach" is not, to Petitioner's knowledge, on any of Petitioner's identification documents.

Born in the Dominican Republic in 1963, Mr. Garcia is a 59-year-old man who has lived in the United States as a lawful permanent resident since the age of seventeen – over 40 years. Appendix ("App.") at 300. The ties that bind him to this country are profound. Here, he is close with his elderly mother, and he has financially and emotionally provided for his adult U.S.-citizen children and his U.S.-citizen partner of over 30 years. (App. 337, 340, 343). For nearly two decades, he maintained steady employment as a warehouse foreman. (App. 646). Mr. Garcia and his partner lived together in the same house for over 30 years before U.S. Immigration and Customs Enforcement ("ICE") detained him. (App. 331).

Mr. Garcia has been arrested twice in his 41 years in the United States. He was first arrested on DWI-related charges in 1988 and pled guilty to Vehicle Traffic Law § 1192.1, a non-criminal traffic infraction under New York State law. (App. 634). For that offense, he was fined $250 and sentenced to fifteen days incarceration. *Id.* Over 25 years later, Mr. Garcia was arrested and charged with sexual abuse in the first degree in violation of N.Y. Penal Law § 130.65(3) and endangering the welfare of a child in violation of N.Y. Penal Law § 260.10(1). (App. 633). The allegations stemmed from an incident in 2017, where a young relative of his partner accused him of touching her inappropriately. (App. 292,

669). In 2019, he pled guilty to sexual abuse in the second degree in violation of N.Y. Penal Law § 130.60(2) and was sentenced to a $1,000 fine, a one-year conditional discharge, and a five-year order of protection. App. 627. He also had to register as a sex offender. *Id*. Mr. Garcia testified during his immigration hearing that he does not remember the incident due to intoxication, but that the allegations were probably truthful. (App. 285).

On December 14, 2021, ICE arrested Mr. Garcia at his family home in Woodhaven, Queens and detained him at the Orange County Correctional Facility in Goshen, New York. (App. 749). ICE charged Mr. Garcia as removable under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), alleging that Mr. Garcia's misdemeanor conviction under N.Y. Penal Law § 130.60(2) amounts to a sexual abuse of a minor aggravated felony. (App. 750- 753); *see also* INA § 101(a)(43)(A), 8 U.S.C. § 1101(a)(43)(A). Immigration officials also charged Mr. Garcia as removable under INA § 237(a)(2)(E)(i), 8 U.S.C. § 1227(a)(2)(E)(i), alleging that his conviction under N.Y. Penal Law § 130.60(2) constitutes a crime of child abuse under the INA and thus rendered Mr. Garcia removable. (App. 750-753).

Mr. Garcia contested both charges of removability, arguing, *inter alia*, that his sole conviction – a misdemeanor offense for which he received no jail time –

was not an aggravated felony because the New York statute of conviction criminalizes a broader range of conduct than the generic federal offense. (App. 228). Mr. Garcia noted that N.Y. Penal Law § 130.60(2) criminalized conduct not covered by 18 U.S.C. § 3509(a), a criminal procedure statute outlining the rights of children victims and witnesses, which the Board has relied upon as a "a guide in identifying the types of crimes [it] would consider to be sexual abuse of a minor." (App. 228). As relief from removal, Mr. Garcia sought asylum, statutory withholding of removal under 8 U.S.C. § 1231(b)(3), relief under the Convention Against Torture, and cancellation of removal for certain permanent residents under 8 U.S.C. § 1229b(a) ("cancellation of removal"). (App. 650-61; 638-45).

The immigration judge ("IJ") sustained both charges of removability. (App. 704). Because the IJ considered Mr. Garcia's conviction to be an aggravated felony, Mr. Garcia was no longer eligible for asylum and cancellation of removal. *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i), 1229b(a)(3). Had the IJ sustained only the child abuse charge of removability, Mr. Garcia would have had an opportunity to present evidence that he merited discretionary relief, including cancellation of removal. *See* § 1229b(a). Subsequently, the immigration court conducted an individual hearing on Mr. Garcia's remaining applications for relief, including

6

statutory withholding of removal and protection under the Convention Against Torture. (SPA 8-19).

### 1. The Immigration Judge's Decision

The IJ denied Mr. Garcia's applications for relief and ordered him removed on April 4, 2022. (SPA 19). In determining that Mr. Garcia's conviction was an aggravated felony, the IJ relied on the Board's statement "that the phrase 'sexual abuse of a minor' 'includes a broad range of maltreatment of a sexual nature.'" (SPA 10) (quoting *Matter of Rodriguez-Rodriguez*, 22 I&N Dec. 991, 996 (BIA 1999)). The IJ then found that it was bound by *Rodriguez v. Barr,* where this Court deemed permissible the Board's reading of "sexual abuse of a minor" to include conduct under N.Y. Penal Law § 130.65(3), a separate provision that criminalizes sexual contact with a child less than eleven years old. (SPA 10-11) (citing *Rodriguez v. Barr*, 975 F. 3d 188, 193-94 2d Cir. 2020). Finally, the IJ rejected Mr. Garcia's argument that the strict liability nature of N.Y. Penal Law § 130.60(2) rendered the statute overbroad. (SPA 11-12). The IJ also found that N.Y. Penal Law § 130.60(2) was a categorical match for a "crime of child abuse, child neglect,

or child abandonment"[2] under 8 U.S.C. § 1227(a)(2)(E)(i). (SPA 12-14). Because the IJ found that his conviction under N.Y. Penal Law § 130.60(2) also constituted a particularly serious crime, the court denied Mr. Garcia's applications for statutory withholding of removal. (SPA 14-17).

Turning to his application for deferral of removal under the Convention Against Torture, the IJ determined that although Mr. Garcia's testimony throughout the hearing was credible, "internally consistent, candid, and plausible." (SPA 8), Mr. Garcia had not presented sufficient evidence that anyone is "likely to harm him for any reason" in the Dominican Republic. (SPA 17).

On April 28, 2022, Mr. Garcia timely appealed the IJ's decision to the Board. (SPA 19; App. 215-25). On August 1, 2022, Mr. Garcia moved to remand his case to the immigration court, in part due to his diagnosis in immigration detention of severe type 2 diabetes subsequent to the IJ's April 4, 2022 decision. (App. 27-137).

---

[2] This ground of deportability, once sustained, also rendered Mr. Garcia removable. Unlike the aggravated felony provision, however, this ground does not automatically bar a noncitizen from obtaining one-time discretionary relief in the form of "cancellation of removal" if he shows that he meets certain statutory criteria and merits discretionary relief. 8 U.S.C. § 1229b(a).

### 2. The Board's Decision

On August 25, 2022, the BIA dismissed Mr. Garcia's appeal and denied his motion to remand. (SPA 3-7). In sustaining the aggravated felony charge, the Board, like the IJ, cited *Rodriguez-Rodriguez* for the proposition that "sexual abuse of a minor" encompasses a "'broad range' of sexual abuse." (SPA 4) (citing *Rodriguez-Rodriguez*, 22 I&N Dec. at 996). The Board observed that it had relied on "18 U.S.C. § 3509(a) as a guide in identifying the types of crimes that we consider to be sexual abuse of a minor" under the INA, and that this Court had deferred to that definition. *Id*. Like the IJ, the Board did not suggest that N.Y. Penal Law § 130.60(2) fell within the scope of the provision, but instead asserted that § 3509 "is not an exclusive definition." *Id.* (citing *Rodriguez-Rodriguez*, 22 I&N Dec. at 996)).

The Board then concluded that Mr. Garcia's overbreadth argument was "foreclosed by *Rodriguez v. Barr,* in which . . . [this Court] held that even though the statute . . . potentially included conduct such as a kiss on the mouth of a child, such conduct encompasses the 'broad range of maltreatment of a sexual nature' covered by the INA.'" (SPA 4) (citing *Rodriguez*, 975 F.3d at 194). The Board stated that the statute at issue in *Rodriguez* "is not meaningfully distinguishable" from § 130.60(2). (SPA 4). The Board observed that this Court had "referenced

that the statute in question required a victim under age 11," but claimed that the Court spent the "majority" of its analysis on the breadth of New York's sexual conduct definition, "and thus the fact that the respondent's statute of conviction requires a victim under age 14 does not change the outcome." *Id.*

The Board rejected Mr. Garcia's arguments that N.Y. Penal Law § 130.60(2) is not an aggravated felony because it is a misdemeanor (SPA 4-5) (citing *Matter of Small*, 23 I&N Dec. 448, 449 (BIA 2002)), and that it is overbroad because it contains no mistake-of-age defense. (SPA 5) (citing *Acevedo v. Barr*, 943 F.3d 619 (2d Cir. 2019)). The Board explained that "given the [sic] 'the state of the relevant binding federal and state law,' *Rodriguez*, 975 F.3d at 194, we affirm the Immigration Judge's finding that [Mr. Garcia's] conviction is a sexual abuse of a minor aggravated felony." (SPA 5).

Finding Mr. Garcia removable on the aggravated felony ground, the Board declined to reach the child abuse ground of removability. Turning to the only form of relief Mr. Garcia remained eligible for in light of the aggravated felony determination, the Board affirmed the IJ's "particularly serious crime" decision and denial of relief under the Convention Against Torture, and it denied Mr. Garcia's motion to remand. (SPA 5-7).

## SUMMARY OF THE ARGUMENT

The Board erred when it found that Mr. Garcia's misdemeanor conviction for sexual abuse in the second degree under N.Y. Penal Law § 130.60(2), which sweeps in minor conduct such as consensual kissing between teenagers, categorically matches the definition of the sexual abuse of a minor aggravated felony under the Immigration and Nationality Act ("INA"). The text and structure of the INA unambiguously foreclose such a broad definition, and this Court should reverse.

The minimum conduct criminalized under N.Y. Penal Law § 130.60(2) does not fit within common understandings of sexual abuse of a minor. The Supreme Court has suggested that the sexual abuse of a minor aggravated felony "encompasses only especially egregious felonies." *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1570 (2017). But even if the generic federal offense corresponds to some state misdemeanors, N.Y. Penal Law § 130.60(2) – which criminalizes kissing between teenagers, and which requires no special relationship between the defendant and victim or knowledge by the defendant of the victim's age – sweeps far more broadly than any permissible interpretation of the federal generic definition. Section 130.60(2) is more expansive than contemporaneous federal definitions, state definitions, or dictionary definitions of the term. It simply is not

11

plausible that Congress intended to impose the severe consequences attached to an aggravated felony charge to the minimum conduct punished under this statute.

Instead of employing traditional tools of statutory interpretation, the Board stated that Mr. Garcia's arguments are "foreclosed" by this Court's decision in *Rodriguez v. Barr*, 975 F.3d 188 (2d Cir. 2020). But *Rodriguez* merely held that the Board may classify a distinct offense, N.Y. Penal Law § 130.65(3), which applies to conduct involving an elementary-aged child ten years old and younger, as a "sexual abuse of a minor" aggravated felony. *Id*. at 194. And the Court reached that holding only after a careful, "context-driven" analysis, *id.*, that does not *de facto* apply to N.Y. Penal Law § 130.60(2), which criminalizes conduct with a minor under the age of fourteen. The Board's rote extension of *Rodriguez* to N.Y. Penal Law § 130.60(2) – a misdemeanor statute that sweeps in conduct such as a just turned sixteen-year-old kissing an almost-fourteen-year-old – cannot be squared with *Esquivel-Quintana* and other binding precedents. Moreover, the Court's limiting language in *Rodriguez* supports, rather than undermines, Mr. Garcia's position.

Alternatively, even if the statutory definition of sexual abuse of a minor is ambiguous in the context of N.Y. Penal Law § 130.60(2), the Board's decision nevertheless should be rejected as unreasonable. The Board offers no clear

12

interpretation of the generic federal offense, instead relying on a definition that fails to provide a limiting standard, and therefore gives no fair notice of what the offense proscribes. Instead, the Board seems to "defin[e] the generic federal offense of sexual abuse of a minor as whatever is illegal under the particular law of the State where the defendant was convicted." *Esquivel-Quintana*, 137 S. Ct. at 1570. This approach should be rejected, as it "turns the categorical approach on its head" and provides "no 'generic' definition at all." *Id*.

Finally, the Board acted in an arbitrary and capricious manner when it concluded that *Rodriguez* foreclosed Mr. Garcia's arguments without providing its own analysis. The statute in *Rodriguez*, N.Y. Penal Law § 130.65(3), requires that the sexual contact involve a child under eleven, rather than a teenager under fourteen, as is the case under N.Y. Penal Law § 130.60(2). Given that the Supreme Court's decision in *Esquivel-Quintana* turned on whether sexual abuse of a minor under the INA included conduct with a victim under sixteen rather than eighteen, the Board's failure to meaningfully address the age difference between N.Y. Penal Law § 130.65(3) and N.Y. Penal Law § 130.60(2) was arbitrary and capricious. The Board's decision was erroneous, and therefore this Court should reverse.

13

## STANDARDS OF REVIEW

This Court reviews the Board's interpretation of state criminal laws like N.Y. Penal Law § 130.60(2) *de novo. Wala v. Mukasey*, 511 F.3d 102, 105 (2d Cir. 2007); *Vargas-Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 165 (2d Cir. 2006). The Court defers to the Board's reasonable constructions of ambiguous provisions of the INA. *Rodriguez*, 975 F.3d at 191 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 937 (1984)). Where traditional tools of statutory construction, such as "the text, structure, and legislative history," demonstrate that a statute is unambiguous, the Court does not defer to the Board's interpretation. *See Cuthill v. Blinken*, 990 F.3d 272, 286 (2d Cir. 2021).

## ARGUMENT

### I. Kissing Between Teenagers Close in Age Is Not an Aggravated Felony Under the Immigration and Nationality Act

Under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), the Attorney Gender may remove a noncitizen "who is convicted of an aggravated felony after admission" to the United States. One of the crimes listed as an aggravated felony under the INA is "sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A). Unlike other aggravated felony definitions in the INA, Congress did not expressly define "sexual abuse of a minor" or provide a federal statutory analog. *See, e.g.,* 8 U.S.C. § 1101(a)(43)(B) (illicit trafficking in a

14

controlled substance aggravated felony "as defined in section 924(c) of title 18, United States Code"); (H) (ransom aggravated felony as "described in section 2251, 2251A, or 2252 of title 18, United States Code").

The Board has declined to provide a clear definition of the "sexual abuse of a minor" aggravated felony, but it has looked to dictionary and federal statutory definitions for guidance. *See In Re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 996 (BIA 1999) (looking to Black Law Dictionary, and 18 U.S.C. §§ 2242, 2243, 2246, 3509(a) as guides to interpret sexual abuse of a minor).

To determine whether a state criminal conviction qualifies as an aggravated felony under the INA, both the agency and federal courts must utilize the categorical approach established by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), and *Mathis v. United States*, 136 S. Ct. 2243 (2016). Under this approach, the court inquires into "whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1567–68 (2017) (quoting *Moncrieffe v. Holder,* 569 U.S. 184, 190 (2013) (internal quotation marks omitted). A conviction is an aggravated felony under the INA "only if a conviction of the state offense 'necessarily involved facts equating to the generic federal offense.'" *Moncrieffe*, 569 U.S. at 190 (quoting *Shepard v. United*

15

*States*, 544 U.S. 13, 24 (2005)). Thus, when determining whether a state conviction is a categorical match for a federal offense, a court must "presume that the state conviction rested upon the least of the acts criminalized by the statute," and then "determine whether that conduct would fall within the federal definition of the crime." *Esquivel-Quintana*, 137 S. Ct. at 1568.

### A. Sexual abuse under N.Y. Penal Law § 130.60(2) is a broad misdemeanor offense that sweeps in minor conduct, including consensual kissing between teenagers

N.Y. Penal Law § 130.60(2) provides: "A person is guilty of sexual abuse in the second degree when he or she subjects another person to sexual contact and when such other person is . . . (2) [l]ess than fourteen years old." The statute sweeps in minor offenses, including conduct such as consensual kissing between teenagers just over two years apart in age, even if the older teenager reasonably believed they were the same age as the younger teenager.[3]

---

[3] As used throughout this brief, "consensual" means consensual in fact, as opposed to legal consent based solely on the age of the younger participant. Under N.Y. Penal Law § 130.60(2), the age of the younger participant is sufficient to establish lack of legal consent, and no lack of consent in fact is required for sexual abuse statutes that criminalize sexual contact based on age. *See* N.Y. Penal Law § 130.05(3) (stating that in New York, "[a] person is deemed incapable of consent when he or she is . . . less than 17 years old."). Unlike N.Y. Penal Law § 130.60(2), other provisions do proscribe conduct that lacks consent in fact. *See, e.g.*, N.Y. Penal Law § 130.65(1) (proscribing sexual contact "by forcible compulsion," or lack of consent in fact).

New York criminal law defines "sexual contact" as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party." N.Y. Penal Law § 130.00(3). New York courts apply a "liberal and non-confining interpretation" of "sexual contact." *People v. Belfrom*, 475 N.Y.S.2d 978, 980 (Sup. Ct., Queens Cnty. 1984); *see also James v. Mukasey*, 522 F.3d 250, 258 (2d Cir. 2008) (observing that N.Y. Penal Law § 130.60(2) sweeps broadly in criminalizing sexual contact and noting in dicta that § 130.60(2) appeared to reach further than the Board's guide for interpreting "sexual abuse of a minor" under the INA). Under New York law, sexual contact encompasses, for example, "a kiss on the mouth." *James*, 522 F.3d at 258 (quoting *People v. Rondon*, 579 N.Y.S.2d 319, 320–21 (Crim. Ct., Queens Cnty. 1992)); *see also People v. Rivera*, 525 N.Y.S.2d 118, 119–20 (Sup. Ct., Bronx Cnty. 1988); *In re Michael J.*, 699 N.Y.S.2d 284, 284–85 (App. Div., 1st Dep't 1999); *c.f. Rodriguez v. Barr*, 975 F.3d 188, 194 (2d Cir. 2020) (discussing the broad reach of New York's definition of sexual contact, and noting that it could include a "momentary touch on the shoulder that satisfies the toucher's improper sexual urge.").

In 2017, at the time of Petitioner's alleged conduct leading to arrest, sixteen-year-olds were criminally responsible for conduct and therefore could be prosecuted under § 130.60(2). *See* N.Y. Penal Law § 30.00(1) (2017) ("Except as

17

provided in subdivision two of this section, a person less than sixteen years old is not criminally responsible for conduct.").[4] Additionally, N.Y. Penal Law § 130.60(2) does not include an "age gap" requirement or "Romeo and Juliet" defense, which would provide an affirmative defense for consensual sexual conduct if the defendant and victim are close in age. *Compare* N.Y. Penal Law § 130.55(c) (allowing a defense to sexual abuse in the third degree when "the defendant was less than five years older than such other person."), *with* N.Y. Penal Law § 130.60 (providing no such defense). Therefore, a sixteen-year-old is guilty under N.Y. Penal Law § 130.60(2) for kissing another teenager just under the age of fourteen. Nor does the statute contain a mistake-of-age defense; it is a strict liability crime with respect to the age of the victim. *See* N.Y. Penal Law § 15.20(3) (providing that a mistake as to the victim's age is not a defense unless the statute expressly states that it is); N.Y. Penal Law § 130.60 (containing no mistake-of-age

---

[4] Subdivision two does not apply to N.Y. Penal Law § 130.60(2). *See* N.Y. Penal Law § 30.00(2) (2017) (stating that 13, 14, and 15 year olds are criminally responsible for certain acts such as murder, sexually motivated felonies, and kidnapping, but not including N.Y. Penal Law § 130.60(2)).

defense).[5] A defendant may have reasonably believed that a thirteen-year-old they kissed was several years older – but even a reasonable belief is no defense to prosecution.[6] N.Y. Penal Law § 130.60(2) therefore makes it unlawful for a just-turned-sixteen-year-old to kiss an almost-fourteen-year-old – just over two years apart in age – regardless of whether the older teen is aware of the younger teen's age.

### B. The INA's text, construed using the normal tools of statutory interpretation, unambiguously forecloses the Board from classifying a conviction under NYPL § 130.60(2) as an aggravated felony

Although 8 U.S.C. § 1101(a)(43)(A) does not expressly define sexual abuse of a minor, its text and structure make clear that this aggravated felony provision

---

[5] *See also People v. Reyes*, 76 A.D.3d 864, 908 N.Y.S.2d 14, 16–17 (N.Y. App. Div., 1st Dep't 2010) (holding that a conviction for N.Y. Penal Law § 130.55, sexual abuse in the third degree, where lack of consent was based on victim's age under N.Y. Penal Law § 130.05(3)(a), was a strict liability crime); *Flores v. Barr*, 791 F. App'x 222 (2d Cir. 2019) ("NYPL § 130.65(3) is a strict liability offense with respect to the victim's age," where the statutory language of N.Y. Penal Law § 130.65(3) is identical to that of N.Y. Penal Law § 130.60(2) except that it criminalizes sexual conduct with a victim under eleven as opposed to fourteen and is a felony).

[6] Further contributing to the statute's breadth, N.Y. Penal Law § 130.60(2) lacks any requirement that the victim and defendant have any special relationship. *See* N.Y. Penal Law § 130.60(2) (referring to sexual contact between two "persons," without specifying the nature of their relationship). Therefore, there is no requirement that the older individual occupy a position of authority over the younger teenager.

19

does not encompass the minimum conduct prohibited under N.Y. Penal Law

§ 130.60(2). Courts use "all available tools of statutory construction in order to

discern Congress's intent before concluding that a statutory term is ambiguous and

deferring to the implementing agency's interpretation" of a statute. *Mathews v.*

*Barr*, 927 F. 3d 606, 615 (2d Cir. 2019); *see also Esquivel-Quintana*, 137 S. Ct. at

1569 (using ordinary tools of statutory construction, including the text of the

statute, the structure of the INA, and state criminal codes to interpret sexual abuse

of a minor as used in the aggravated felony provision of 8 U.S.C.

§ 1101(a)(43)(A)).

### a. Text of the Statute

Contemporaneous definitions make clear that the everyday understanding of

sexual abuse of a minor excludes the consensual kissing between teenagers

criminalized by N.Y. Penal Law § 130.60(2). When sexual abuse of a minor was

added to the INA's list of aggravated felonies, for example, Black's Law

Dictionary defined "[s]exual abuse" as "[i]llegal sex acts performed against a

minor by a parent, guardian, relative, or acquaintance." Black's Law Dictionary

1375 (6th ed. 1990); *see also Rodriguez-Rodriguez*, 22 I&N Dec. at 996 (quoting

the same Black's Law dictionary definition). Because "sex acts" typically involve

the touching of a more limited set of body parts ("breast, vagina, penis, or anus"),

Black's Law Dictionary (11th ed. 2019),[7] and the offense is predicated on "a special relationship of trust between the victim and offender," *Esquivel-Quintana*, 137 S. Ct. at 1570, this dictionary definition is far narrower than N.Y. Penal Law § 130.60(2), with its broad definition of sexual contact and the lack of a "special relationship" requirement.

N.Y. Penal Law § 130.60(2) also sweeps far more broadly than the federal statutes that define sexual abuse. In the "same omnibus law that added sexual abuse of a minor to the INA," *Esquivel-Quintana*, 137 S. Ct. at 1571, Congress amended a federal sexual abuse of a minor criminal statute, which prohibits an individual from "knowingly engag[ing] in a sexual act with another person who (a) has attained the age of 12 years but has not attained the age of 16 years; and (b) is at least four years younger than the person so engaging." 18 U.S.C. § 2243(a) (1996). Under the provision, "sexual acts" and "sexual contacts" involve specific body parts – "the genitalia, anus, groin, breast, inner thigh, or buttocks." 18 U.S.C. § 2246 (1996).

---

[7] The sixth edition of Black's Law Dictionary does not define "sex acts." The term is now defined, however, as synonymous with "sexual relations," which is defined as "sexual intercourse" or "physical sexual activity that does not necessarily culminate in intercourse . . . . Sexual relations usually involve the touching of another's breast, vagina, penis, or anus." Black's Law Dictionary (11th ed. 2019).

N.Y. Penal Law § 130.60(2) is overbroad in comparison to 18 U.S.C. § 2243 in several respects. First, § 2243 requires a four-year age gap, while N.Y. Penal Law § 130.60(2) does not. Second, New York's sexual contact definition includes almost any part of the body and is therefore overbroad compared to § 2243. *See supra* at 23-25. And third, unlike N.Y. Penal Law § 130.60(2), § 2243 includes a mistake-of-age defense. 18 U.S.C. § 2243(c).

The federal civil definition of sexual abuse of a child at 18 U.S.C. § 3509 ("Child victims' and child witnesses' rights") is similarly limited to more serious conduct such as rape, molestation, prostitution, or incest, or "sexually explicit conduct" involving "the genitalia, anus, groin, breast, inner thigh, or buttocks." 18 U.S.C. § 3509(a)(8), (9) (1996). N.Y. Penal Law § 130.60(2) is therefore overbroad in its expansive definition of sexual contact compared with § 3509, as the federal statute has a narrower understanding of sexual contact.[8]

---

[8] Courts have raised questions about whether 18 U.S.C. § 3509, a criminal procedure statute concerning the rights of children victims, is a reasonable guide in interpreting "sexual abuse of minor" under the INA, as "[i]t is directed neither to substantive criminal law nor to immigration law. It addresses neither the elements of criminal conduct nor the characteristics of aggravated felonies." *Mugalli v. Ashcroft*, 258 F.3d 52, 58 (2d Cir. 2001); *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1152 n.2 (9th Cir. 2008) *overruled on other grounds by United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011); *see also Rodriguez-*

22

In addition to turning to related federal statutes, courts applying the categorical approach regularly "look to state criminal codes for additional evidence about the generic meaning of sexual abuse of a minor." *Esquivel-Quintana*, 137 S. Ct. at 1571 (citing *Taylor*, 495 U.S. at 598 and *Duenas Alvarez*, 549 U.S. at 190). In 1996, the year that the sexual abuse of a minor aggravated felony was added to the INA, over a third of the states (sixteen plus Washington D.C.) had criminal laws that included "sexual abuse" or "sexual abuse of a minor" in the titles of the statute, and only three of these states would reach the minimum conduct proscribed under NYPL § 130.60(2).[9] (SPA 20-29). Therefore, the vast majority of states that chose to explicitly define "sexual abuse" through criminal statues would not have

---

*Rodriguez*, 22 I&N Dec. at 1000 (J. John Guendelsberger, dissenting) (rejecting the use of § 3509 as a guide for interpreting "sexual abuse of a minor," explaining that "[w]e are not here construing a law affording rights, but are determining the extent to which a conviction will be treated as an aggravated felony for purposes of immigration law. . . . [T]he more appropriate reference point is the federal criminal law definition of 'sexual abuse of a minor.'" (citing 18 U.S.C. §§ 2241-2246)).

[9] The state statutes analyzed in *Esquivel-Quintana* were "age of consent" or statutory rape laws, focused exclusively on sexual intercourse rather than sexual contact. 137 S. Ct. at 1569. While there is some overlap in the statutes, the provisions analyzed here focus solely on sexual contact criminalized, at least in part, based on the age of the victim. *Id.* ("To qualify as a sexual abuse of a minor, the statute of conviction must prohibit certain sexual acts based at least in part on the age of the victim.").

considered consensual kissing between a thirteen-year-old and a sixteen-year-old to fall within that definition.

Thus, the "general consensus from state criminal codes points to the same generic definition as dictionaries and federal law," *Esquivel-Quintana*, 137 S. Ct. at 1572, demonstrating that the generic definition of sexual abuse of a minor would not include consensual kissing between teenagers close in age.

### b. Structure of the Immigration and Nationality Act

The structure of the INA also supports the contention that a misdemeanor conviction under N.Y. Penal Law § 130.60(2) – which may be punishable with merely a conditional discharge or a maximum of one year imprisonment – is not an aggravated felony.[10] *See Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *Cuthill*, 990 F.3d at 281 ("[a] provision that may seem ambiguous in

---

[10] At the time of Mr. Garcia's conviction, the maximum penalty under New York State law for a Class A misdemeanor was a year imprisonment. *See* N.Y. Penal Law § 70.15(1) (2019). That was subsequently amended to now be a maximum 364-days imprisonment. *See* N.Y. Penal Law § 70.15(1) ("A sentence of imprisonment for a Class A misdemeanor . . . shall not exceed three hundred sixty-four days.")

isolation is often clarified by the remainder of the statutory scheme …" (quoting *King v. Burwell*, 576 U.S. 473, 492 (2015)).

As the Supreme Court observed in *Esquivel-Quintana*, the "sexual abuse of a minor" aggravated felony appears in the INA "in the same subparagraph as 'murder' and 'rape' – among the most heinous crimes it defines as aggravated felonies." 137 S. Ct. at 1570 (citations omitted). The Court emphasized that this context, along with the phrase "aggravated felony," "suggests that sexual abuse of a minor encompasses *only especially egregious felonies*," and not more minor offenses. *Id.* (emphasis added).

Under the INA, an aggravated felony carries the most serious consequences of any immigration provision. If the Board finds that a conviction is an aggravated felony, "no provision in the INA – and virtually no act by the Attorney General – can prevent him or her from being removed." *Torres v. Lynch*, 578 U.S. 452, 479-80 (2016) (J. Sotomayor, dissenting); *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1210–11 (2018) ("[R]emoval is a virtual certainty for a[] [noncitizen] found to have an aggravated felony conviction, no matter how long he has previously resided here.").

The Supreme Court has repeatedly recognized that aggravated felonies are "crimes singled out for the harshest deportation consequences." *Carachuri-*

*Rosendo v. Holder*, 560 U.S. 563, 566. The term "felony" is generally reserved for

"'serious crime[s] usually punishable by imprisonment for more than one year or

by death,'" *id.* at 574 (quoting Black's Law Dictionary 694 (9th ed. 2009)) (original

brackets deleted), and "an 'aggravated' offense is one 'made worse or more serious

by circumstances such as violence, the presence of a deadly weapon, or the intent

to commit another crime.'" *Id.* (quoting *Lopez v. Gonzales*, 549 U.S. 47, 75

(2006)). *See also id.* at 695 (noting that "the English language tells us that most

aggravated felonies are punishable by sentences far longer than 10 days"). The

Supreme Court has cautioned against interpretations of the aggravated felony

provisions in the INA that includes misdemeanor conduct.[11] *See, e.g., Moncrieffe,*

---

[11] The Board cites to its precedent decision in *Matter of Small*, 23 I&N Dec. 448 (BIA 2002), which held that N.Y. Penal Law § 130.60(2) constitutes a sexual abuse of a minor aggravated felony. But in *Small*, the Board engaged in no analysis of the New York statute or the federal definition. *Id.* at 456 (Rosenberg, dissenting) ("Our responsibility to construe the immigration law requires deliberation, analysis, and time to grapple with the legal issues that are posed in the context of factual circumstances presented in individual appeals. . . . [T]he majority . . . completely skips over the critical legal issue . . ."). Instead, the Board simply rejected the argument that a state misdemeanor cannot be considered an aggravated felony. *Id.* at 449-50. In this case, the Board did not rely on *Small* for any other point. *See* Respondent's Opposition to Petitioner's Motion for a Stay of Removal at 15, ECF No. 15.1 (noting that "the BIA did not cite *Matter of Small* to support its categorical analysis and instead cited it for the principle that offenses categorized as misdemeanors by state law could be considered aggravated felonies under the INA").

569 U.S. at 199 (warning against an interpretation that would "render even an undisputed misdemeanor an aggravated felony," because that is "just what the English language tells us not to expect" (quoting *Lopez*, 549 U.S. at 54)).

Considering the structure of the INA, a misdemeanor like N.Y. Penal Law § 130.60(2), which criminalizes the consensual kissing between two teenagers just over two years apart in age and which could be punished by a maximum year in jail, does not fit alongside "the most heinous crimes [the INA] defines as aggravated felonies." *Esquivel-Quintana*, 137 S. Ct. at 1570.

### c. Popular understandings of sexual abuse of a minor

Common sense also supports the finding that the minimum conduct criminalized under N.Y. Penal Law § 130.60(2) – consensual kissing between teenagers – should not yield the draconian consequences attached to an aggravated felony, including mandatory ICE detention and almost certain banishment. *See Carachuri-Rosendo*, 560 U.S. at 573-74 (noting that courts look to the "commonsense conception" of statutory terms to interpret aggravated felony provisions (quoting *Lopez*, 549 U.S. at 53)); *Rodriguez-Rodriguez*, 22 I&N Dec. at 996 (defining the sexual abuse of a minor aggravated felony to include "conduct that would fit within the term as it commonly is used."). The Board's reading of the statute violates the "well established-rule that 'absurd results are to be

avoided.'" *Cuthill*, 990 F.3d at 281 (quoting *McNeill v. United States*, 563 U.S. 816, 822 (2011)); *see also Rotimi v. Holder*, 577 F.3d 133, 142 (2d Cir. 2009) (avoiding a statutory interpretation that "could result in absurd and unjust consequences").

At the start of the academic year in New York City, for example, most freshman in high school are thirteen or fourteen years old.[12] Therefore, N.Y. Penal Law § 130.60(2) criminalizes a just sixteen-year-old junior from kissing an almost-fourteen-year-old freshman. These types of interactions were normalized within society at the time the sexual abuse of a minor aggravated felony was added to the INA. For example, on its face, NYPL § 130.60(2) would criminalize the conduct at a school dance if a freshman went with a junior and the two teenagers danced together. Similarly, popular culture presented these types of interactions as a normalized and non-criminal. *See* Dazed and Confused (Alphaville 1993) (showing romantic relationship between rising freshman Sabrina and rising senior

---

[12] Children in New York City who are four or five when they begin kindergarten will be thirteen or fourteen when they enter ninth grade. *See New Students*, NYC Dep't of Educ. (Dec. 15, 2022), https://www.schools.nyc.gov/enrollment/enrollment-help/new-students (children may start kindergarten in the calendar year that they turn five).

Tony); *See* Goonies (Amblin Entm't 1985) (showing kiss between 13-year-old Mikey and 16-year-old Andy); *see also* Romeo + Juliet (Bazmark Prod. 1996) (Juliet is 13, Romeo is thought to be 17). [13]

Common usage would not characterize teenagers just over two years apart in age kissing as they leave class together as "sexual abuse of a minor," a phrase that denotes conduct between an adult and a child, not between two adolescents. *See, e.g.*, Black's Law Dictionary 10 (7th ed. 1999) (defining "sexual abuse" as "[a]n illegal sex act, esp[ecially] one performed against a minor by an adult"); *United States v. Kirk*, 111 F.3d 390, 395 n.8 (5th Cir. 1997) ("[T]he circumstances

---

[13] The difference is age is also meaningful biologically and socially, as "[t]he onset of puberty . . .typically occurs between ages 8 and 13 for girls and ages 9 and 14 for boys." National Institutes of Health, Puberty and Precocious Puberty (Dec. 15, 2022), https://www.nichd.nih.gov/health/topics/puberty; *see also* Alison Bellavance, *An Overview Of Adolescent Sexual Development*, National Sexual Violence Resource Center, 2 (2014), https://www.nsvrc.org/sites/default/files/2014-01/saam_2014_overview-of-adolescent-sexual-development.pdf (describing development of sexuality during stages of adolescence, including specifically "Early Adolescence (Ages 10–14)" as "a time of emotional and relationship development" when "puberty and physical changes occur").

surrounding sexual contact between two teenagers are far different from those surrounding sexual contact between a young child and a much older adult.").[14]

And because N.Y. Penal Law § 130.60(2) is broad in other ways – requiring no special relationship and providing no mistake-of-age defense – the potential defendant need not even realize that the victim is only thirteen. Therefore, the lack of mistake of defense is particularly severe in criminalizing conduct between two teenagers who may have just met.

\* \* \* \*

The traditional tools of statutory interpretation lead to only one conclusion: the minimum conduct under N.Y. Penal Law § 130.60(2) – the consensual kissing between teenagers just over two years apart in age – is unambiguously broader than the generic federal definition of sexual abuse of a minor.

---

[14] Social science and medical researchers generally differentiate nonabusive teenage sexual experiences from sexual abuse where a significant age difference between parties, threat, or coercion is present. *See, e.g.*, Theresa E. Senn et al., *Characteristics of Sexual Abuse in Childhood and Adolescence Influence Sexual Risk Behavior in Adulthood*, 36 Archives Sexual Behav. 637, 639 (2007) (defining childhood sexual abuse as "any contact sexual experiences . . . (1) before age 13 with someone 5 or more years older or (2) between ages 13 and 16 with someone 10 or more years older, and . . . (3) any contact sexual experience before age 17 involving force or coercion . . . ."), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2042031.

**II. Even if the Statute Is Ambiguous as to Whether It Covers Kissing Between Teenagers, the Board's Interpretation Is Unreasonable and Is Arbitrary and Capricious**

Even if 8 U.S.C. § 1101(a)(43)(A) does not unambiguously foreclose the Board's construction, the Board's interpretation fails because it is not reasonable. *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 845 (1984). If, after using all traditional tools of statutory interpretation, the statute at issue is ambiguous, under *Chevron* Step Two, the Court must determine whether the agency reasonably interpreted the ambiguity, *see Chevron*, 467 U.S. at 845; *Mugalli*, 258 F. 3d at 55, and a Court may look to whether the agency adopted "*some* limiting standard" that is "rationally related to the goals of the Act." *AT & T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 388 (1999) (emphasis in original).[15] The Board's interpretation, which fails to identify any discernible standard, does not meet this test.

---

[15] Non-precedential, unpublished Board decisions like the one here are not entitled to *Chevron* deference. *Varughese v. Holder*, 629 F.3d 272, 274 (2d Cir. 2010) (per curiam) (citing *Dobrova v. Holder*, 607 F.3d 297, 300 (2d Cir. 2010)); *Flores*, 791 F. App'x at 225 n.2. However, the Court will grant deference to reasonable constructions of the INA made in an earlier binding, published decision on which a non-precedential decision relies. *See Husic v. Holder*, 776 F.3d 59, 62 (2d Cir. 2015) (quoting *Mizrahi v. Gonzales*, 492 F.3d 156, 158 (2d Cir.2007).

In addition, an agency's interpretation of statutory text proves impermissible if it is arbitrary and capricious – a standard that requires, at minimum, that the Board "provide reasoned explanation for its action." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quoting *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 515 (2009). Because the Board erroneously treated *Rodriguez v. Barr* as dispositive, it failed to address important aspects of the question before it, and remand is required.[16]

### A. The Board's interpretation is not reasonable at *Chevron* Step Two because it construes sexual abuse of a minor as covering a "broad range of sexual misconduct" without providing a limiting standard

A court may not defer to an agency when it has failed to provide a "limiting standard" in its construction of an ambiguous statute. *AT & T Corp.*, 525 U.S. at 388; *Estrada-Espinoza*, 546 F.3d at 1157 (9th Cir. 2008) ("[W]hen the BIA 'hasn't done anything to particularize the meaning'" of sexual abuse of a minor under the INA, "'giving *Chevron* deference to its determination of that meaning has no

---

[16] These steps are highly related; the Supreme Court has instructed that "under *Chevron* step two, we ask whether an agency interpretation is 'arbitrary or capricious in substance.'" *Judulang,* 565 U.S. at 52 n.7 (quoting *Mayo Found. for Med. Ed. and Research v. United States*, 562 U.S. 44, 53, (2011)); *see also Brathwaite v. Garland*, 3 F.4th 542, 552 (2d Cir. 2021) ("[N]o deference, under *Chevron* or otherwise, is due to agency interpretations that are 'arbitrary, capricious, or manifestly contrary to the statute.'") (quoting *Adams v. Holder*, 692 F.3d 91, 95 (2d Cir. 2012)).

practical significance.'" (quoting *Mei v. Ashcroft*, 393 F.3d 737, 739 (7th Cir. 2004),); *c.f. Esquivel-Quintana*, 137 S. Ct. at 1570 (rejecting the government's proposed definition of "sexual abuse of a minor" because it provides "no 'generic' definition at all.").

In its decision, the Board disclaims its responsibility for providing a discernible rule or operable definition of sexual abuse of a minor. The Board starts off on the right track, noting that it has "adopted the definition of 'sexual abuse' of a child contained in 18 U.S.C. § 3509(a) as a guide in identifying the types of crimes that [it] consider[s] to be sexual abuse of a minor." (SPA 4). But it veers off that track when it explains that § 3509 "is not an exclusive definition," *id*., without providing guidance as to when departures from § 3509(a) are (or are not) warranted.

The Board's precedential decisions construing this term – at least as applied here – similarly fail to offer a limiting principle. In *Rodriguez-Rodriguez*, the Board seems to offer an operable standard when it explains that the definition of sexual abuse at § 3509(a)(8) provides "a useful identification of the forms of sexual abuse," that "capture[s] the broad spectrum of sexually abusive behavior." 22 I&N Dec. at 995-96. Applying this definition, the Board concludes that a California indecent exposure statute, which falls within § 3509(a)(8), (9)(D), also

33

falls within the category of sexual abuse of a minor. *Id.* at 996-97. But the Board also notes that the definition at § 3509(a) is only a "guide," not a "definitive standard or definition." *Id*. at 996. It also notes approvingly the definition in Black's Law Dictionary, which defined the term as an "[i]llegal sex act[] performed against a minor by a parent, guardian, relative, or acquaintance," *Id*. (quoting Black's Law Dictionary 1375 (6th ed. 1990)), and noted that this definition "includes a broad range of maltreatment of a sexual nature." *Id*.

In applying *Rodriguez-Rodriguez* here, the Board does not apply the definitions at § 3509(a) or in Black's Law Dictionary, *see* (SPA 4-5), neither of which reach the minimum conduct under N.Y. Penal Law § 130.60(2). Instead, the Board relies on *Rodriguez-Rodriguez*'s language about the definition including a "'broad range' of sexual abuse," (SPA 4), without setting forth any clear principle for determining when conduct outside the scope of § 3509(a) or Black's definitions would be included in the generic federal offense.

The Board suggests that *any* state offense that can be described as "maltreatment of a sexual nature" falls within the scope of the generic offense. (SPA 4) (quoting *Rodriguez*, 975 F.3d at 194). But this position cannot be reconciled with *Esquivel-Quintana,* where the Supreme Court rejected the Government's attempt to "turn[] the categorical approach on its head by defining

the generic federal offense of sexual abuse of a minor as whatever is illegal under the particular law of the State where the defendant was convicted." 137 S. Ct. at 1570. As the Court emphasized, such an approach is impermissible because it offers "no 'generic' definition at all." *Id*. (citing *Taylor*, 495 U.S. at 591).[17]

The only case in which this Court permitted the Board to deviate from the limits of 18 U.S.C. § 3509(a)(8) is in *Rodriguez v. Barr.* But as discussed *infra*, a specific aggravating factor – the victim's elementary-school age – was present. *Rodriguez*, 975 F.3d at 193-94. The Board therefore has failed, here, to provide an

---

[17] The Board's failure to provide an operable definition is not only unmanageable, but it raises serious vagueness concerns. It is well-established that a law may not be construed in a way that is "so vague and standardless that it leaves the public uncertain as to the conduct" falling within its scope. *Giacco v. Pennsylvania,* 382 U.S. 399, 402 (1966); *see also Dimaya*, 138 S. Ct. at 1212 (explaining that due process and "ordinary notions of fair play and the settled rules of law" require that a definition is sufficiently clear enough to provide "'fair notice' of the conduct a statute proscribes." (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). This Court has noted that "[a]lthough the BIA lacks authority to rule on the constitutionality of the statutes it administers . . . it may take [a petitioner's] constitutional vagueness argument into account" when construing an ambiguous statute. *Flores*, 791 F. App'x. at 226.

operable definition or show why N.Y. Penal Law § 130.60(2) – which protects

high-school-aged victims – falls within that definition.

**B. The Board acted in an arbitrary and capricious manner when it concluded that *Rodriguez v. Barr* was dispositive without undertaking its own analysis**

The Board's decision must also be reversed as arbitrary and capricious, as

the Board "misconceived the law." *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94

(2022) ("*Chenery I*"), and "failed to consider ... important aspect[s] of the

problem" before it. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140

S.Ct. 1891, 1910 (2020) (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc.

v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)).

The Board concluded that Mr. Garcia's argument that his misdemeanor

conviction was not a sexual abuse of a minor aggravated was "foreclosed" by

*Rodriguez v. Barr*. (SPA 4.)[18] But in *Rodriguez*, this Court upheld the Board's

---

[18] Though the Court need not reach the issue, Mr. Garcia respectfully preserves for *en banc* review the argument that *Rodriguez* is wrongly decided as it is inconsistent with this Court's own prior precedent, finding "sexual contact" under New York law overbroad with respect to the federal aggravated felony ground, and fails to heed the Supreme Court's requirement that the categorical inquiry start with a fixed generic definition of the federal removability ground. *See Esquivel-Quintana*, 137 S. Ct. at 1570; *Moncrieffe*, 569 U.S. at 190; *Taylor*, 495 U.S. at 599-600; *cf. Rodriguez*, 975 F.3d at 192 (deferring to "the BIA's adoption of a 'flexible' definition of INA 'sexual abuse of a minor'").

interpretation of "sexual abuse of a minor" as reaching sexual contact of a child under the age of 11 *under Chevron step two*. *Rodriguez*, 975 F.3d at 192, 194. The Court accepted the Board's decision as permissible, but the Court did not conclude that the Board was required to make this finding. To the contrary, the Court noted that "the dissonance between a probation-punished crime of 'sexual abuse of a minor,' when it is grouped in INA § 101(a)(43)(A) with murder and rape, presents a disproportionality that raises questions about the merits of the agency's decision to construe the federal crime to encompass such a wide range of behavior." *Id*. at 194. In ultimately upholding the Board's decision, this Court repeatedly stressed the relevant New York statute requires that the victim be younger than eleven. *See id.* at 189, 192, 194, and expressly referred to the victim's age in summarizing its holding. *Id*. at 194 ("Since . . . [§ 130.65(3)] requires both that the victim be under the age of eleven and that the perpetrator's contact with the victim be 'for the purpose of gratifying sexual desire,' . . . we conclude that Rodriguez's state law conviction constitutes an aggravated felony . . .").

Here, the Board concluded without analysis that the statute in *Rodriguez* – a Class D felony offense against a victim "less than eleven years old," with a maximum penalty of seven years in prison – "is not meaningfully distinguishable" from § 130.60(2), which is a misdemeanor that requires a victim under the age of

fourteen. (SPA 4). The Board engaged in no reasoning as to why this age difference was immaterial, entirely ignoring the social and emotional differences between ten-year-olds and thirteen-year-olds and that age is *the* element that makes sexual contact "abusive" under N.Y. Penal Law § 130.60(2). *See Esquivel-Quintana*, 137 S. Ct. at 1569. ("To qualify as a sexual abuse of a minor, the statute of conviction must prohibit certain sexual acts based at least in part on the age of the victim.").

The contention that the three-year age difference between the individuals is of no consequence is also at odds with *Esquivel-Quintana*, where the Court found that two years in age meant the difference between a conviction that was a sexual abuse aggravated felony under the INA and one that was not. *See Esquivel-Quintana*, 137 S. Ct. 1572 ("Petitioner has 'show[n] something *special* about California's version of the doctrine' – that the age of consent is 18, rather than 16 – and needs no more to prevail.") (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 191 (2007)).

The Board's erroneous assumption that *Rodriguez* was dispositive requires remand, as "an order may not stand if the agency has misconceived the law." *Chenery I*, 318 U.S. at 94; *see also Massachusetts v. EPA*, 549 U.S. 497, 532, 534-35 (2007); *Yale–New Haven Hosp. v. Leavitt*, 470 F.3d 71, 86–87 (2d Cir. 2006).

The Supreme Court recently confirmed that an agency acts arbitrarily and capriciously when it erroneously determines that its decision-making process is foreclosed by judicial precedent. In *Regents*, the Supreme Court explained that the Department of Homeland Security may not base a decision (there, the rescission of its Deferred Action for Childhood Arrivals ("DACA") policy) on an incomplete reading of a court of appeals decision. *Regents of the Univ. of Cal.*, 140 S.Ct. at 1911-12. The agency in that case had misread a Fifth Circuit decision that cast doubt on the legality of certain Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA") benefits as broadly foreclosing *any* relief under DACA. *Id*. Because the agency erroneously concluded that the Fifth Circuit's decision was dispositive, it did not address important considerations with respect to DACA's continuance, and therefore failed to engage in the requisite "reasoned decisionmaking." *Id*. at 1912 (citing *Michigan v. EPA*, 576 U.S. 743, 750 (2015).

So too here, the Board erred when it determined that this Court's decision in *Rodriguez* was dispositive without undertaking any further analysis. *See State Farm*, 463 U.S. at 43, 57 (1983) (where agency "failed to consider … an important aspect of the problem" before it, agency actions was arbitrary and capricious, and remand was required). Given the Supreme Court's remark that "sexual abuse of a

minor" is intended to focus on "especially egregious felonies," *Esquivel-Quintana,* 137 S. Ct. at 1570, and the Court's conclusion that the age of a victim is material, *id.* at 1572, the Board was required to meaningfully consider whether the generic definition of sexual abuse of a minor should include misdemeanor offenses involving kissing between teenagers just over two years apart in age. This is particularly so given the serious proportionality concerns that this Court has already expressed about the Board's definition as applied to more serious felony conduct. *See Rodriguez*, 975 F.3d at 194.

## CONCLUSION

For the foregoing reasons, the Court should determine that Mr. Garcia has not been convicted of an aggravated felony and grant this petition for review.

DATED: December 15, 2022

<div style="text-align: right">

Respectfully submitted,

*/s/ Kyle Barron*
Kyle Barron
Julie Dona
John DeBellis
THE LEGAL AID SOCIETY
199 Water Street, 3rd Floor
New York, NY 10038
(212) 577-3629

*Counsel for Petitioner*

</div>

40

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Local Rules 32.1(a)(4), because the brief contains 9266 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point New Times Roman.

*/s/ Kyle Barron*

Kyle Barron
The Legal Aid Society

*Counsel for Petitioner*

**GARCIA PINACH V. GARLAND, No. 22-6421**
**SPECIAL APPENDIX**

Decision and Order of the Board of Immigration Appeals,
August 25, 2022…………………………………………………..….…SPA-1


Decision and Order of the Immigration Judge, April 04, 2022………..….…SPA-8


State criminal statues current in 1996 with "sexual abuse" or
"sexual abuse of a minor" included in title…………………………….SPA-20



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**GARCIA PINACH, JOAQUIN**
**A 037159990**
**110 Wells Farm Road**
**Goshen NY 10924**

**DHS/ICE Office of Chief Counsel - NYV**
**201 Varick Street, Rm. 1130**
**New York NY 10014**

Name: **GARCIA PINACH, JOAQUIN**        **A 037-159-990**

**Date of this Notice:    8/25/2022**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:

Saenz, Andrea A

Userteam:  Docket

SPA-1



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*



*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**DeBellis, John**
**The Legal Aid Society**
**199 Water Street  3rd Floor**
**New York  NY  10038**

**DHS/ICE Office of Chief Counsel - NYV**
**201 Varick Street, Rm. 1130**
**New York NY 10014**

**Name: GARCIA PINACH, JOAQUIN**            **A 037-159-990**

**Date of this Notice:    8/25/2022**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,



Donna Carr
Chief Clerk

Enclosure

Panel Members:

Saenz, Andrea A

Userteam:  Docket

SPA-2

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Joaquin GARCIA PINACH, A037-159-990

Respondent

<div style="border:1px solid black">

**FILED**

Aug 25, 2022

</div>

ON BEHALF OF RESPONDENT: John DeBellis, Esquire

ON BEHALF OF DHS: Kaylee Trost, Assistant Chief Counsel

IN REMOVAL PROCEEDINGS
On Appeal from a Decision of the Immigration Court, New York, NY

Before: Saenz, Appellate Immigration Judge

SAENZ, Appellate Immigration Judge

The respondent, a native and citizen of the Dominican Republic and a lawful permanent resident of the United States, appeals from the Immigration Judge's April 4, 2022, decision denying his application for asylum and withholding of removal under sections 208 and 241(b)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3), as well as his request for protection under the regulations implementing the Convention Against Torture ("CAT").[1] The respondent has also filed a motion to remand pursuant to *Matter of B-Z-R-*, 28 I&N Dec. 563 (A.G. 2022), as well as new evidence concerning his health. The Department of Homeland Security ("DHS") opposes the respondent's motion. The appeal will be dismissed, and the motion will be denied.

We review the findings of fact, including the determination of credibility, made by the Immigration Judge under the "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review all other issues, including issues of law, discretion, or judgment, under the de novo standard. 8 C.F.R. § 1003.1(d)(3)(ii).

On March 22, 2019, the respondent pled guilty to sexual abuse in the second degree pursuant to section 130.60(2) of the New York Penal Law (IJ at 2; Exh. 2, Tab B). An order of protection was issued, and the respondent received a fine and was granted a 1-year conditional discharge (IJ at 2; Exh. 2, Tab B). At the time of his conviction, an individual was guilty of violating the statute when he or she "subjects another person to sexual contact and when such other person is

---

[1] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).

A037-159-990

less than fourteen years old" (IJ at 3). N.Y. Penal Law § 130.60(2) (2001). Based on this conviction, DHS charged the respondent with removability under section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), as a respondent convicted of an aggravated felony defined in section 101(a)(43)(A) of the INA, 8 U.S.C. § 1101(a)(43)(A), a law relating to sexual abuse of a minor (IJ at 2; Exh. 1). DHS also charged the respondent with removability under section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i), a respondent convicted of a crime of child abuse (IJ at 2; Exh. 1).

We affirm the Immigration Judge's determination that the respondent's conviction constitutes a sexual abuse of a minor aggravated felony (IJ at 2-5). In determining whether a conviction constitutes an aggravated felony under the INA, we use the categorical approach, examining whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony. *See Rodriguez v. Barr*, 975 F.3d 188, 191 (2d Cir. 2020). In applying the categorical approach, we look to the minimum conduct necessary for a violation of the state statute. *See id.*

We have adopted the definition of "sexual abuse" of a child contained in 18 U.S.C. § 3509(a) as a guide in identifying the types of crimes that we consider to be sexual abuse of a minor for the purposes of section 101(a)(43)(A) of the INA, 8 U.S.C. § 1101(a)(43)(A). *See Matter of Rodriguez-Rodriguez*, 22 I&N Dec. 991, 996 (BIA 1999); *see also Mugalli v. Ashcroft*, 258 F.3d 52, 57-60 (2d Cir. 2001) (giving deference to this definition). Thus, "sexual abuse of a minor" includes, but is not limited to, "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children." 18 U.S.C. § 3509(a)(8).

We agree with the Immigration Judge that the respondent's conviction for sexual abuse in the second degree is a categorical sexual abuse of a minor aggravated felony (IJ at 2-5). The respondent's statute criminalizes subjecting a child under 14 years old to sexual contact, which is encompassed in the "broad range" of sexual abuse contemplated by the INA (IJ at 3-4). *See Matter of Rodriguez-Rodriguez*, 22 I&N Dec. at 996. We note that 18 U.S.C. § 3509 is not an exclusive definition of sexual abuse of a minor but provides meaningful guidance. *See Matter of Rodriguez-Rodriguez*, 22 I&N Dec. at 996. The respondent's argument is foreclosed by *Rodriguez v. Barr*, in which the United States Court of Appeals for the Second Circuit held that a conviction under a similar statute, section 130.65(3) of the New York Penal Law, is categorically a sexual abuse of a minor aggravated felony (IJ at 4). The court held that even though the statute at issue in *Rodriguez v. Barr* potentially included conduct such as a kiss on the mouth of a child, such conduct encompasses the "'broad range' of maltreatment of a sexual nature' covered by the INA." *Rodriguez*, 975 F.3d at 194. *Rodriguez* is not meaningfully distinguishable from this case Although the Second Circuit in *Rodriguez* referenced that the statute in question required a victim under age 11, the majority of its analysis is that the New York "sexual conduct" definition falls under the federal definition of sexual abuse of a minor, and thus the fact that the respondent's statute of conviction requires a victim under age 14 does not change the outcome. *See Rodriguez*, 975 F.3d at 193-94. We also disagree that the respondent's conviction is meaningfully distinguished from the statute in *Rodriguez* because it is associated with a lighter sentence

2

SPA-4

A037-159-990

(Respondent's Br. at 10-11). *Cf. Matter of Small*, 23 I&N Dec. 448, 449 (BIA 2002) (sexual abuse of a minor encompasses misdemeanor offenses).

The respondent further argues that his statute of conviction is overbroad compared to the generic federal offense, which requires a mens rea of "knowing," because the New York statute lacks a mistake-of-age defense and is therefore a strict liability crime (Respondent's Br. at 12-14). This argument is foreclosed by *Acevedo v. Barr*, 943 F.3d 619 (2d Cir. 2019) (IJ at 4-5). In *Acevedo*, the Second Circuit held that under New York law, a criminal statute should be construed as defining a crime of mental culpability unless the statute clearly indicates a legislative intent to impose strict liability. 943 F.3d at 625 (citing section 15.15(2) of the New York Penal Law). The respondent has not meaningfully distinguished his statute of conviction from the statute at issue in *Acevedo*. Although the respondent cites analysis from *Cabeda v. Att'y Gen. of U.S.*, 971 F.3d 165 (3d Cir. 2020), this case is not binding in the Second Circuit (Respondent's Br. at 13).

Therefore, given the "the state of the relevant binding federal and state law," *Rodriguez*, 975 F.3d at 194, we affirm the Immigration Judge's finding that the respondent's conviction is a sexual abuse of a minor aggravated felony. We will not separately determine whether the Immigration Judge properly sustained the charge of removability under section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i). *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

We also uphold the Immigration Judge's determination that the respondent is barred from asylum and withholding of removal because he has been convicted of a particularly serious crime (IJ at 7-10). *See* INA §§ 208(b)(2)(A)(ii), 241(b)(3)(B)(ii), 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2). The respondent argues that the elements of the crime do not bring it under the ambit of a particularly serious crime because it is a misdemeanor and does not require a showing of actual or potential harm to a victim (Respondent's Br. at 17). However, we agree with the Immigration Judge that the respondent's conviction involves the sexual abuse of a child under age 14, and crimes against persons are more likely to be categorized as particularly serious crimes (IJ at 9). *See, e.g.*, *Nethagani v. Mukasey*, 532 F.3d 150, 155 (2d Cir. 2008); *Matter of N-A-M-*, 24 I&N Dec. 336, 343 (BIA 2007), *abrogation on other grounds recognized by Flores-Vega v. Barr*, 932 F.3d 878 (9th Cir. 2019).

The respondent also argues that the facts and underlying circumstances of the crime do not support a finding that the offense is a particularly serious crime. Specifically, the respondent contends that he received a 1-year conditional discharge with an order of protection, fine, and requirement to register as a sex offender without jail time or probation, and he did not physically harm his victim (Respondent's Br. at 17-18). The respondent is correct about his relatively low sentence, although the sentence imposed is not the most salient factor to consider in determining the seriousness of an offense. *See Matter of N-A-M-*, 24 I&N Dec. at 343. Most relevant, the Immigration Judge found the respondent engaged in sexual conduct with a 7-year-old child who was a relative of his partner living at their home, and that there is a level of harm inherent to sexual contact with a child (IJ at 7-9; Tr. at 49-51; Exh. 2, Tab C). Under these circumstances, where the Immigration Judge's factual findings are not clearly erroneous, we agree with the Immigration

3

A037-159-990

Judge that the facts and underlying circumstances of the sexual abuse conviction support a particularly serious crime determination and outweigh the relative leniency of his sentence. *See Matter of R-A-M-*, 25 I&N Dec. 657, 661 (BIA 2012) (concluding that a child pornography conviction constitutes a particularly serious crime because it contributes to the sexual abuse of children).[2]

The respondent seeks deferral of removal under the CAT because he fears torture resulting from his personal characteristics, including his status as a criminal deportee and as a person with mental illness without any connections in the Dominican Republic (IJ at 10; Tr. at 44-45, 58-59).

We uphold the Immigration Judge's denial of the respondent's application for deferral of removal under the CAT. The Immigration Judge acknowledged that Dominican authorities monitor criminal deportees, who experience difficulties reintegrating into society (IJ at 10-11; Exh. 5, Tabs Q-V). However, the Immigration Judge found that the evidence did not establish that Dominican authorities would subject him to torture (IJ at 11). The Immigration Judge further found that the respondent would face difficulty in obtaining treatment for his mental illness in the Dominican Republic, which has limited resources for this, but that the respondent's difficulty would not amount to torture (IJ at 11; Exh. 5, Tabs X, W). *Cf. Pierre v. Gonzales*, 502 F.3d 109, 121–22 (2d Cir. 2007) (a respondent cannot demonstrate a likelihood of torture by relying on evidence of inhumane conditions in a prison, without evidence regarding specific intent to torture). The Immigration Judge also found that the respondent presented insufficient evidence that gangs would seek to target him, or that he has a particularized risk of torture as a result from vigilante groups (IJ at 11-12). *See Matter of M-F-O-*, 28 I&N Dec. 408, 414 (BIA 2021) (a fear of torture alone is insufficient to satisfy the "more likely than not" standard).

Overall, we find that the Immigration Judge's factual findings are not clearly erroneous, in that she considered the evidentiary record and made supportable findings that the respondent would face hardships if removed, but that these hardships did not rise to the level of torture under the CAT. *See Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 160 (2d Cir. 2005) (pointing to instances of human rights violations, without more, cannot establish an individual respondent would more likely than not be tortured upon removal). The Immigration Judge's evaluation represents a permissible view of the evidence on this record. *See Matter of D-R-*, 25 I&N Dec. 445, 455 (BIA 2011), *pet. for review granted and remanded on other grounds by Radojkovic v. Holder*, 599 F. App'x 646 (9th Cir. 2015).

Although the respondent generally contends that the Immigration Judge did not accurately assess the medical report by Dr. Rosenberg, he has not sufficiently explained how any evidence overlooked relates to his risk of future torture (Respondent's Br. at 18-19). We also disagree with the respondent's argument that the Immigration Judge gave less weight to Dr. Rosenberg's statements because they were submitted in the form of a report, rather than live testimony (Respondent's Br. at 19). The Immigration Judge found that Dr. Rosenberg's report was

---

[2] Because the foregoing factors are dispositive, we do not rely on the Immigration Judge's findings regarding the respondent's potential to reoffend or evidence of rehabilitation (IJ at 9-10; Respondent's Br. at 15-16).

A037-159-990

insufficient to establish the respondent's likelihood of future torture, and the respondent has not meaningfully challenged this finding on appeal (IJ at 11).

We are also unpersuaded by the respondent's argument that the Immigration Judge did not consider his aggregate risk of torture from all sources (Respondent's Br. at 23-25). *See Matter of J-R-G-P-*, 27 I&N Dec. 482, 484 (BIA 2018). The Immigration Judge acknowledged the respondent's combined claim, including his risk of harm resulting from his status as a criminal deportee, his mental illness, and his lack of personal connections in the Dominican Republic (IJ at 10-12) before analyzing the evidence. *See* 8 C.F.R. § 1208.16(c)(3). Because the respondent has not satisfied his overall burden of proof, we agree with the Immigration Judge's denial of the respondent's request for deferral of removal under the CAT.

We will also deny the respondent's motion to remand. During the pendency of this appeal, the Attorney General issued *Matter of B-Z-R-*, which overruled *Matter of G-G-S-*, 26 I&N Dec. 339 (BIA 2014) and held that immigration adjudicators may consider a respondent's mental health in particularly serious crime determinations. Although the respondent presented evidence before the Immigration Judge and on appeal regarding his mental health during immigration detention, he has not alleged that he experienced mental illness at the time of the 2018 crime (Tr. at 47, 53; Exh. 5, Tabs A, F; Respondent's Mot. at 7-8). We also conclude that a remand is not warranted for consideration of new evidence regarding the respondent's diabetes diagnosis received in April 2022 because he has not shown that the additional evidence would change the result in the case (Respondent's Mot. at 8, Tabs A-E). *See Matter of L-A-C-*, 26 I&N Dec. 516, 526 (BIA 2015). The respondent contends that a remand is warranted because people with diabetes experience higher rates of depression than the general population, and his mental health will further decompensate if he is removed or experiences a lapse in treatment (Respondent's Mot. at 8). Nevertheless, the respondent has not presented evidence regarding the risk of torture for individuals with diabetes in the Dominican Republic or how this increases his existing risk. Without evidence explaining the risk of torture based on this new diagnosis, the respondent has not adequately demonstrated that the evidence would change the result in the case. *See Lin*, 432 F.3d at 158 (a respondent must demonstrate a particularized risk of torture).

Accordingly, the following orders will be entered.

ORDER: The appeal is dismissed.

FURTHER ORDER: The motion to remand is denied.

SPA-7

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**UNITED STATES IMMIGRATION COURT**
**201 VARICK STREET**
**NEW YORK, NEW YORK**

File No: A037-159-990

|  |  |  |
|---|---|---|
| | : | **DETAINED** |
| In the Matter of: | : | |
| | : | |
| **GARCIA PINACH, Joaqin** | : | **IN REMOVAL PROCEEDINGS** |
| | : | |
| Respondent. | : | |
| | : | |

**CHARGES**:  INA § 237(a)(2)(A)(iii)         Aggravated Felony under INA § 101(a)(43)(A), Relating to Murder, Rape, or Sexual Abuse of a Minor

            INA § 237(a)(2)(E)(i)         Convicted of a Crime of Domestic Violence, Crime of Stalking, or Crime of Child Abuse, Child Neglect, or Child Abandonment

**APPLICATION**:                  Motion to Terminate

**ON BEHALF OF RESPONDENT**              **ON BEHALF OF DHS**
John DeBellis, Esq.                      Kaylee Trust, Assistant Chief Counsel, DHS
The Legal Aid Society                    201 Varick Street, Room 738
199 Water Street, 3rd Floor              New York, NY 10014
New York, NY 10038

**DECISION OF THE IMMIGRATION JUDGE**

The Respondent is a 59-year-old native and citizen of the Dominican Republic who first entered the United States in 1981 as a lawful permanent resident when he was approximately 17 years old. For the reasons set forth below, the Court finds the Respondent removable as charged and denies his applications for relief.

At the outset, the Court finds the Respondent to have presented credible testimony under the totality of the circumstances. His testimony was consistent with the other evidence of record, internally consistent, candid, and plausible. INA §§ 241(b)(3)(C), 240(c)(4)(C)). The Court has considered the entirety of the record of proceedings, including the testimony the Respondent

SPA-8

provided at the Individual Hearing on March 17, 2022, and the testimony provided by Dr. Samuel Rosenberg, LCSW, Ph.D., in the form of a Declaration (*see* Ex. 5 at 13-16).

## I.     The Respondent's Motion to Terminate is Denied; the Respondent is Removable as Charged

The Respondent filed a motion to terminate proceedings on January 26, 2022, on the grounds that the Department failed to meet its burden of proof to establish he is removable as charged because his sole conviction underlying his charges of removability is not a categorical match. The parties were provided the opportunity for briefing, and all of that briefing has been considered. For the reasons set forth below, the Respondent's motion will be denied.

The Respondent is a native and citizen of the Dominican Republic who entered the United States at New York, NY, as a Lawful Permanent Resident on August 23, 2010. His removability is premised upon an October 1, 2020 New York State conviction for sexual abuse in the second degree in violation of New York Penal Law ("NYPL") § 130.60(2) for which he was sentenced to a $1,000 fine, a one year conditional discharge, and a five year order of protection was issued against him. He is charged with removability under two grounds: (1) INA § 237(a)(2)(A)(iii) for having been convicted of an "aggravated felony" as defined at INA § 101(a)(43)(A) (sexual abuse of a minor), and (2) INA § 237(a)(2)(E)(i) for having been convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment.

The Department bears the burden of establishing by clear and convincing evidence that an alien who has been admitted to the United States is removable as charged. INA § 240(c)(3)(A); 8 C.F.R. § 1240.8(a).

The Court will consider each charge of removability, in turn.


## A.     INA § 237(a)(2)(A)(iii): Aggravated Felony Conviction for Sexual Abuse of a Minor

The relevant statutory provisions provide as follows:

"Any alien who is convicted of an aggravated felony at any time after admission is deportable." INA § 237(a)(2)(A)(iii).

An "aggravated felony" is defined as "murder, rape, or sexual abuse of a minor[.]" INA § 101(a)(43)(A).

> "A person is guilty of sexual abuse in the second degree when he or she subjects another person to sexual contact and when such other person is . . . [l]ess than fourteen years old." NYPL § 130.60(2).

The Respondent contends that his conviction for sexual abuse in the second degree in violation of NYPL § 130.60(2) is not an aggravated felony crime of sexual abuse of a minor as defined in 8 U.S.C. § 1101(a)(43)(A) because the conduct criminalized by the New York statute broadly criminalizes conduct not covered by the generic federal offense. *See* Resp't Motion at pp. 3-7. This argument depends on the assumption that "'sexual abuse of a minor' [is] coextensive with 18 U.S.C. § 3509(a)(8)." *Id.* at 4. However, both the BIA and the Second Circuit have declined to find 18 U.S.C. § 3509(a)(8) to be the federal analogue to "sexual abuse of a minor."

In *In re Rodriguez-Rodriguez*, the BIA found that the phrase "sexual abuse of a minor" "includes a broad range of maltreatment of a sexual nature" and, importantly, contact is not a limiting factor. 22 I&N Dec. 991, 996 (BIA 1999). The BIA also held that the definition of sexual abuse in 18 U.S.C. § 3509(a) is "a useful identification of the forms of sexual abuse" and "encompasses those crimes that can reasonably be considered sexual abuse of a minor." *Id.* at 995-96. Notably, the BIA expressly declined to adopt 18 U.S.C. § 3509(a) as the definition of "sexual abuse of a minor" but instead affirmed it as "a guide in identifying the types of crimes [it] consider[s] to be sexual abuse of a minor." *Id.* at 996.

In *Rodriguez v. Barr*, the Second Circuit unambiguously affirmed the adoption of the BIA's "'flexible' definition of INA 'sexual abuse of a minor'" articulated in *Rodriguez-Rodriguez*, while determining whether sexual abuse in the first degree in violation of NYPL § 130.65(3) is an aggravated felony sexual abuse of a minor. 975 F.3d 188, 192 (2d Cir. 2020). Under New York law, "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [w]hen the other person is less than eleven years old[.]" NYPL § 130.65(3). The Second Circuit noted that the criminalized conduct of "sexual contact" under New York law is extremely broad, but nonetheless held that a first degree sexual abuse conviction under NYPL § 130.65(3) was categorically an aggravated felony sexual abuse of a minor because the elements of the victim being under the age of eleven and that the perpetrator's physical contact with the victim be for the purpose of gratifying sexual desire was as broad as the INA's definition of sexual abuse of a minor. *Rodriguez*, 975 F. 3d at 193-94.

SPA-10

Here, the Respondent's statute of conviction, sexual abuse in the second degree, has nearly identical elements to sexual abuse in the first degree analyzed in *Rodriguez v. Barr*. *Compare* NYPL § 130.60(2), *with* NYPL § 130.65(3). The two statutes both require that a person "subject another person to sexual contact." *See id.* Despite this identical language, the Respondent nonetheless contends that the "sexual contact" criminalized by sexual abuse in the second degree in violation of NYPL § 130.60(2) is overly broad compared to the federal generic offense because it criminalizes physical contact involving the touching of the mouth, neck, or navel—parts of the body not covered by 18 U.S.C. § 3509(a). Resp't Motion at 5-6. The Second Circuit already addressed this exact same argument in *Rodriguez*, when it emphasized § 3509 is "only a guide, not an inflexible boundary, for construing the INA phrase 'sexual abuse of a minor'" and it found that "New York law's reference to 'intimate' body parts does not necessarily make the New York statute's definition of sexual contact broader than that provided in the INA." 975 F.3d at 193. Thus, the Court is bound by the Second Circuit's reasoning to find that the element of "sexual contact" contained in sexual abuse in the second degree is not broader than the INA sexual abuse of a minor.

One element is different between first and second degree sexual abuse under New York law: the age of the victim. First degree sexual abuse requires that the victim be less than eleven years old, whereas, the victim of second degree sexual abuse must be less than fourteen years old. *Compare* NYPL § 130.60(2), *with* NYPL § 130.65(3). The Respondent contends that the Second Circuit relied heavily on the age of the victim element to find sexual abuse in the first degree is an aggravated felony and, thus, the difference in the age of the victims distinguishes first degree sexual abuse from second degree sexual abuse to such a degree that second degree sexual abuse is not an aggravated felony. *See* Resp't Motion at 7. The Court disagrees. The Second Circuit's recurring reference to the age of the victim in *Rodriguez* appears to be more descriptive rather than prescriptive. *See* 975 F.3d at 193-94. Given that the Second Circuit did not hinge its decision on the young age of the victim, the Court sees no reason to find the exact same conduct perpetrated on a person who at most would be only three years older would not be an aggravated felony.

Finally, the Respondent also contends that second degree sexual abuse is not an aggravated felony sexual abuse of a minor because, as a strict liability crime, the *mens rea* is overbroad compared to the generic federal offense. *See* Resp't Motion at 8-9. Sexual abuse of a minor under the INA requires a *mens rea* of "knowing." *See Acevedo v. Barr*, 943 F.3d 619, 624 (2d Cir. 2019).

Under New York law, "[a] statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability." NYPL § 15.15(2). However, in any statute "defining an offense in which the age of a child is an element thereof, knowledge by the defendant of the age of such child is not an element of any such offense[.]" *Id.* § 15.20(3). Thus, sexual assault in the second degree under NYPL § 130.60(2) is a strict liability offense with regard to the age of the victim element. *See also, e.g., Flores v. Barr*, 791 Fed. Appx. 222, 224 (2d Cir. 2019) (finding "NYPL § 130.65(3) is a strict liability offense with respect to the victim's age" where the criminalized sexual contact element is identical to NYPL § 130.60(2)). It does not follow, however, that all other elements of this offense are strict liability elements when one element is defined as such, especially since New York's penal code construes each crime as requiring a culpable *mens rea*. *See* NYPL § 15.20(3). *See, e.g., Acevedo*, 943 F.3d at 625-26 (citing NYPL § 15.15(2) while finding the *actus reas* of "sexual conduct" criminalized under NYPL § 130.45 requires a knowing or intentional *mens rea* by operation of law). Given that there must still be a culpable mental state attached to the element of "subject[ing] another person to sexual contact," the Court finds the *mens rea* of this offense is not overbroad.

Accordingly, the Court finds that the Department has sustained its charge that the Respondent has been convicted of an aggravated felony by clear and convincing evidence.

## B.     INA § 237(a)(2)(E)(i): Convicted of a Crime of Child Abuse, Child Neglect, or Child Abandonment

The relevant statutory provision provides as follows:

> "Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable." INA § 237(a)(2)(E)(i).

In the absence of a federal law defining the term "crime of child abuse" the BIA has defined the term as "any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." *Matter of Velasquez-Herrera*, 24 I&N Dec. 503, 512 (BIA 2008). The definition, "at a minimum," covers convictions for offenses involving "sexual abuse, including direct acts of sexual contact . . . as well as any act that involves the use or exploitation of a child as an object of sexual gratification[.]" *Id.* The Second Circuit has

repeatedly given *Chevron* deference to this definition. *See Matthews v. Barr*, 927 F.3d 606, 612-13 (2d Cir. 2019); *Florez v. Holder*, 779 F.3d 207, 213-14 (2d Cir. 2015).

The Respondent contends that his conviction is not a crime of child abuse because it does not have as an element a high risk of harm to the child as required under Second Circuit and BIA precedent. Resp't Motion at 12. According to the respondent, New York child endangerment laws only constitute crimes of child abuse if the state "statute requires either an 'intentional, knowing, reckless or criminally negligent act or omission' as well as 'a sufficiently high risk of harm to a child.'" *Id.* (citing *Florez*, 779 F.3d at 212 (quoting *Matter of Soram*, 25 I&N Dec. 378, 383-384 (BIA 2010)); *Matthews*, 927 F.3d at 616 (same)). The Respondent then suggests that a conviction under NYPL § 130.60(2) does not require any showing of a culpable *mens rea* nor a sufficiently high risk of harm to a child. *Id.*

However, as noted above, while a conviction under NYPL § 130.60(2) is a strict liability offense as to the element of the victim's age, it is not so to the other elements of the offense. Rather, it requires a culpable mental state while committing the *actus reas* of subjecting another to sexual contact. *See supra*. Thus, the Respondent's argument that the *mens rea* elements are a categorical mismatch is unpersuasive.

The Court is also unpersuaded by the Respondent's argument that NYPL § 130.60(2)'s elements are a mismatch to the risk of harm required under BIA precedent. The Respondent's argument, relying on *Matter of Soram*, conflates child endangerment crimes with child sexual abuse crimes. In *Matter of Soram*, the BIA articulated a standard for when a child endangerment crime, which might include acts of neglect which do not result in injury to the child, is categorically a crime of child abuse. *See Soram*, 25 I&N Dec. at 383-384. In other words, the standard set forth in *Soram* identified the outer limits of a crime of child abuse instead of rewriting when a child sexual abuse crime constitutes a crime of child abuse. The Second Circuit has given *Chevron* deference to this standard and, applying the *Soram* standard, found that endangering the welfare of a child under NYPL § 260.10(1) is a categorical match with the BIA's definition of a crime of child abuse. *Matthews*, 927 F.3d at 623.

Here, the *actus reas* element of second degree sexual abuse under New York law fits well within the broadly defined crime of child abuse in the INA. Under NYPL § 130.60(2), a perpetrator must subject a person less than 14 years old to sexual contact. "Sexual contact" "means any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual

desire of either party." NYPL § 130.00(3). This conduct undoubtedly falls within the BIA's definition of a crime of child abuse, which broadly includes "any act that involves the use or exploitation of a child as an object of sexual gratification[.]" *Velasquez-Herrera*, 24 I&N Dec. at 512.

Additionally, even if the Court were to inflexibly apply the *Soram* standard, the Respondent's contention that there is not a sufficient risk of harm to the child victim because the prohibited acts "could occur while the child is sleeping and unaware of the contact[,]" is similarly unpersuasive. *See* Resp't Motion at 12. The Respondent's hypothetical assumes that a child victim faces no risk of harm if the victim is asleep and unconscious when being subject to the de minimis conduct of a kiss or touching the neck, navel, or chest of a boy. This hypothetical, however, obscures the fact that the statute criminalizes the touching of intimate parts of a child under 14 years old *for the purpose of gratifying sexual desires* of either party. *See* NYPL § 130.00(3); NYPL § 130.60(2). Thus, no matter how minimal the contact, under NYPL § 130.60(2), the child victim will always be subject to contact of a sexual nature. The Respondent seems to assume that a child cannot be harmed by conduct they are not consciously aware of. However, he points to no precedent to support this argument. The fact that the victim might be unconscious at the time of contact does not negate the fact that there is still a risk of harm should the victim become aware of the sexual contact later and suffer negative mental and social harm as a result. And given that victims of abuse have higher rates of mental, personality, and anxiety disorders than their non-abused peers, there is inherently a sufficiently high risk of harm to the wellbeing of the child under the statute.

Accordingly, the Court finds that the Department has sustained its charge, by clear and convincing evidence, that the Respondent has been convicted of a crime of child abuse and, therefore, is deportable under INA § 237(a)(2)(E)(i).

## II. The Respondent's Applications for Asylum and Withholding of Removal are Denied on the Ground that the Respondent has been Convicted of a Particularly Serious Crime

### A. Legal Standards

An applicant found to be convicted of a particularly serious crime is statutorily barred from asylum and withholding of removal under both the INA and Torture Convention. For withholding of removal, a noncitizen has been convicted of a PSC if he has been convicted of one or more

aggravated felonies that result in an aggregate prison sentence of at least five years." INA § 241(b)(3)(B)(ii). However, the Attorney General may determine that a noncitizen has been convicted of a PSC based upon a conviction that was not for an aggravated felony and did not result in an aggregate sentence of at least five years in prison. INA § 241(b)(3)(B); *see also Nethagani v. Mukasey*, 532 F.3d 150, 156-57 (2d Cir. 2008). A noncitizen who has been convicted of a PSC shall be considered a "danger to the community of the United States" within the meaning of INA § 241(b)(3)(B)(ii). 8 C.F.R. § 1208.16(d)(2); *see Matter of Q-T-M-T-*, 21 I&N Dec. 639, 655-56 (BIA 1996); *Matter of C-*, 20 I&N Dec. 529 (BIA 1992); *Ahmetovic v. INS*, 62 F.3d 48, 53 (2d Cir. 1995).

Here, the Respondent was convicted of an aggravated for which he did not receive a five-year sentence. Accordingly, he has not been convicted of a *per se* particularly serious crime. However, the Court finds that his crime nevertheless constitutes a particularly serious crime.

In determining whether the Respondent's crime is particularly serious, the Court considers "(1) the nature of the conviction, (2) the circumstances and underlying facts of the conviction, (3) the type of sentence imposed, and (4) whether the type and circumstances of the crime indicate that the [noncitizen] will be a danger to the community." *Nethagani*, 532 F.3d at 155 (citing *Matter of Frentescu*, 18 I&N Dec. 244, 247 (BIA 1982), *modified*, *Matter of C-*, 20 I&N Dec. at 529. The judge should first determine whether "the elements of the offense . . . potentially bring the crime into a category of particularly serious crimes." *Ojo v. Garland*, __F.4th__, 2022 WL 386036, at *8 (2d Cir. Feb. 9, 2022) (*citing Matter of N-A-M-*, 24 I&N Dec. 336, 342 (BIA 2007). If not, "the individual facts and circumstances of the offense are of no consequence," and the applicant is not barred from relief. *Id*. However, "once the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction." *N-A-M-*, 24 I&N Dec. at 342. Crimes against persons are more likely to be particularly serious than are crimes against property. *Nethagani*, 532 F.3d at 155 (internal citations omitted) (finding that a conviction for reckless endangerment in the first degree under the NYPL, for shooting a pistol in the air, was a conviction for a particularly serious crime); *see also Matter of L-S-*, 22 I&N Dec. 645, 649 (BIA 1999).

**B. Analysis**

SPA-15

As set forth above, on October 1, 2020 the Respondent was convicted of sexual abuse in the second degree in violation of New York Penal Law ("NYPL") § 130.60(2) for which he was sentenced to a $1,000 fine and a one-year conditional discharge. A five-year order of protection was issued against him. The statutory elements of this offense are as follows: "A person is guilty of sexual abuse in the second degree when he or she subjects another person to sexual contact and when such other person is . . . [l]ess than fourteen years old." NYPL § 130.60(2).

The Court finds that these elements potentially bring this crime within the ambit of a particularly serious crime. A child less than 14 years old is a vulnerable member of the community, most in need of the law's protection. Sexual abuse has been shown to have lasting, devastating, life-long impacts upon children. The Court finds this crime is properly characterized as a crime against persons, and that it is properly characterized as a violent crime.

The record does not otherwise reflect circumstances or underlying facts that would diminish its seriousness. The Court recognizes that the Respondent's sentence was relatively light, given that he ultimately was not sentenced to a prison term. However, the order of protection was a lengthy one of five years. The Court notes further that the Respondent is required to register as a sex offender. The record reflects that the victim of this crime was, at the time, a seven-year-old child who was a relative of the Respondent's partner, living in the basement of their home.

Although the Respondent candidly testified that he probably did, in fact, touch the child victim in this case, he also testified to his belief that he had been drinking at the time. However, the record contains little evidence that the Respondent remains committed to sobriety. Indeed, the Respondent previously was convicted of driving under the influence and testified, under cross-examination, that he continues to drink. Under these circumstances, the Court is concerned that the Respondent might again commit a similar violent crime if under the influence of alcohol. The record contains insufficient evidence of rehabilitation to convince this Court that this heinous offense might not again be committed against a child.

As a final matter, the Court notes that the Respondent was the only witness who testified in support of his application, even though he has family members, including a partner, who live in the New York area. It bears repeating that it is the Respondent's burden of proof to demonstrate eligibility for relief, including that he has not been convicted of a disqualifying offense. *See* 8 C.F.R. § 1240.8(d) ("If the evidence indicates that one or more of the grounds for mandatory denial

of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply").

Accordingly, the Court concludes that the Respondent has been convicted of a particularly serious crime and denies his applications for asylum and withholding of removal on this basis.

### III. The Respondent's Application for Torture Convention Protection is Denied because he has Presented Insufficient Evidence to Show that it is "More Likely Than Not" that he will be Tortured if Returned to the Dominican Republic

An applicant who establishes eligibility for Torture Convention protection shall be granted withholding of removal under the Torture Convention, unless he is subject to mandatory denial of that relief, in which case the applicant shall be granted deferral of removal. 8 C.F.R. §§ 1208.16(c)(4), 1208.17(a). Deferral of removal under the Torture Convention does not consider any of the bars to withholding under INA § 241(b)(3)(B). 8 C.F.R. § 1208.17(a); *Matter of Neguise*, 27 I&N Dec. 347 (BIA 2018). An applicant for Torture Convention protection must prove that it is "more likely than not" that he will be subjected to torture if removed to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). "Torture" is "an extreme form of cruel and inhuman treatment," defined, in part, as the intentional infliction of severe pain or suffering by, or at the instigation of, or with the consent or acquiescence of a public official. 8 C.F.R. § 1208.18(a)(1).

The Respondent argues that it is likely that he will be tortured if he is returned to the Dominican Republic because, as a criminal deportee, and a person with "severe mental problems," without any connections in the country, he will be targeted by "police, gang, healthcare workers, and numerous other members of Dominican society." *See* Letter Brief, filed March 10, 2022, Part III.b.ii (unpaginated pages 10-12).[1] However, this claim is insufficiently supported by the factual record.

The Respondent presented insufficient evidence to show that anyone in the Dominican Republic is even aware of his removal from the United States, much less is likely to harm him for any reason. The record does contain evidence showing that Dominican authorities monitor the whereabouts of criminal deportees from the United States. *See, e.g.,* Ex. 5 at Tabs Q-V. However, this evidence tends to show that criminal deportees, at most, face significant difficulties re-

---

[1] The unpaginated single-space, 12-page, letter brief does not comply with the Immigration Court Practice Manual. The Court nevertheless has considered it.

integrating into Dominican life. Without more, the Court finds this country condition evidence regarding what happens to deportees generally to be insufficient to show that it is "more likely than not" that the Respondent, himself, will suffer harm amounting to "torture" by Dominican authorities.

The record also contains evidence that there are limited resources for the treatment of mental illness in the Dominican Republic, and that there is a stigma associated with mental illness in the Dominican Republic. *See, e.g.,* Ex. 5 at Tab W (article outlining insufficient resources for mental illness) and Tab X (outlining perceived stigma associated with mental illness). However, the Respondent, himself, does not suffer from a mental illness that requires extensive treatment or would make his illness apparent to others in the Dominican Republic. Indeed, Dr. Rosenberg, LCSW, Ph.D., who examined the Respondent on February 1, 2022, observes that the Respondent did not report that he suffered from mental illness in the past, but nevertheless opines that he suffers from Major Depressive Disorder and recommends "initiation of pharmacotherapy." Ex. 5 at 15. The Court finds this report insufficient to show that the Respondent's symptomatology would place him at risk if he were to be returned to the Dominican Republic. Moreover, the difficulties he would face in obtaining pharmacotherapy in the Dominican Republic would not, in the end, amount to "torture," especially given that he has not shown to be in need of such treatment in the past.

The Respondent argues that he will be subjected to torture by unspecified "gang members" because he will be perceived to be wealthy, citing the evidence of the Dominican government's monitoring of deportees in support of such assertion. *See* Pre-Hearing Letter Brief at unpaginated page 11. The Court finds this evidence insufficient to show that gang members have any interest in torturing the Respondent. Nor does the record support the Respondent's assertion that the presence of vigilante justice in the Dominican Republic will make him subject to torture. The record shows, at most, that Dominican police authorities are under-resourced and that private citizens often take matters into their own hands. *See, e.g.,* Ex. 5 at Tab H (crime and safety report) and Tab M (Dominican Republic leads in vigilante justice, followed by the United States in eighth place). The record does not support the Respondent's assertion that such vigilante justice will likely result in his own likely targeting for "torture."

It is well-established that "the existence of a consistent pattern of gross, flagrant, or mass violations of human rights in a particular country does not, as such, constitute sufficient grounds

for determining that a particular person would be in danger of being subjected to torture upon his return to that country.  Specific grounds must exist that indicate the individual would be personally at risk." *J-E-*, 23 I&N Dec. at 303.   The Court finds that the record contains insufficient evidence of such specific grounds in this case.  It is well-established that eligibility for protection under the Torture Convention cannot be established by stringing together a series of suppositions to show that torture is more likely than not to occur unless the evidence shows that each step in the hypothetical chain of events is more likely than not to happen.  *Matter of J-F-F-,* 23 I&N Dec. 912, 917-18 (A.G. 2006).  Here, the record contains insufficient evidence for this Court to conclude that it is "more likely than not" that the Respondent will be tortured if returned to the Dominican Republic.

Accordingly, the following orders will be entered:

## ORDERS

**IT IS HEREBY ORDERED** that Respondent's motion to terminate proceedings is **DENIED.**

**IT IS FURTHER ORDERED** that the applications for asylum, withholding of removal, and protection pursuant to the Torture Convention are **DENIED.**

**IT IS FUTHER ORDERED** that the Respondent be **REMOVED** from the United States to the Dominican Republic on the charges contained in the Notice to Appear.

 April 4, 2022
Date

_____
Margaret Kolbe
Immigration Judge

**EITHER PARTY HAS THE RIGHT TO APPEAL FROM THIS DECISION. IN ORDER TO BE TIMELY, A NOTICE OF APPEAL MUST BE RECEIVED AT THE BOARD OF IMMIGRATION APPEALS WITHIN THIRTY DAYS OF SERVICE OF THIS DECISION**

**Order of the Immigration Judge**

.

Immigration Judge: Kolbe, Margaret  04/04/2022

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service

To: [      ] Noncitizen | [        ] Noncitizen c/o custodial officer | [  E  ] Noncitizen's atty/rep. | [  E  ] DHS

By: Kolbe, Margaret¸ ☐ Court staff | ☒ Immigration judge

Date: 04/04/2022

| State | Statute | Does relevant subsection criminalize the minimum conduct under NYPL § 130.60(2)? | Punishment |
|---|---|---|---|
| Alabama | Ala. Code § 13A-6-66(a)(3) (1977), sexual abuse in the first degree | No, ≥16 year old ("y/o") defendant subjects <12 y/o to sexual contact | Class C Felony |
| | Ala. Code § 13A-6-67(a)(2) (1977), sexual abuse in the second degree | No, ≥19 y/o defendant subjects < 16 and >12 y/o to sexual contact | Class A misdemeanor |
| | Ala. Code § 13A-6-69.1 (1977), sexual abuse of a child less than 12 years old | No, ≥16 y/o defendant subjects <12 y/o to sexual contact | Class B felony |
| Alaska | Alaska Stat. § 11.41.434 (1990), sexual abuse of a minor in the first degree | No, ≥16 subjects <13 y/o to sexual penetration; ≥18 subjects <18 to sexual penetration, requires special relationship | Unclassified felony |
| | Alaska Stat. § 11.41.436 (1990), sexual abuse of a minor in the second degree | No, sexual penetration with 13, 14, or 15 y/o, and requires 3 year-age gap; ≥ 16 y/o defendant subjects victim < 13 to sexual contact | Class B Felony |

SPA-21

| | | | |
|---|---|---|---|
| | Alaska Stat. § 11.41.438 (1990), sexual abuse of a minor in the third degree, felony | No, ≥16 y/o defendant subjects 13, 15 or 15 y/o to sexual contact and requires 3-year age gap | C Felony |
| | Alaska Stat. § 11.41.440 (1990). Sexual abuse of a minor in the fourth degree | No, defendant < 16 subjects <13 y/o to sexual contact and requires 3-year age gap; defendant ≥18 subjects 16, 17 y/o victim to sexual contact, requiring 3-year age gap and special relationship | Class A misdemeanor |
| Arkansas | Ark. Code Ann. § 5-14-108 (1993), sexual abuse in the first degree. | No, ≥18 defendant subjects <14 victim to sexual contact. Sexual contact only includes sex organs, buttocks, anus or breast. Ark. Code Ann. § 5-14-101(18) | Class C Felony |
| | Ark. Code Ann. § 5-14-109 (1995), sexual abuse in the second degree, misdemeanor | No, <18 defendant subjects <14 y/o victim to sexual contact, but sexual contact only includes sex organs, buttocks, anus or breast. Ark. Code Ann. § 5-14-101(18), and requires a 2-year age gap | Class A Misdemeanor |

SPA-22

| California | Cal. Penal Code Ann. § 288.5 (1989), continuous sexual abuse of a child (1996) | No, requires 3 or more instances of sexual or lewd conduct with victim <14 y/o, with special residence or access to child over three months | Felony |
|---|---|---|---|
| Delaware | Del. Code Ann., tit. 11, § 778 (1953), continuous sexual abuse of a child; class B felony | No, 3-month duration of acts of sexual conduct with victim <14 | Class B Felony |
| Idaho | Idaho Code § 18-1506 (1992), sexual abuse of a child under the age of sixteen years | No, ≥18 defendant subjects "minor child" to sexual contact. | Felony |
| Illinois | 750 Ill. Comp. Stat. § 5/12-15 (1988), criminal seual abuse | No, <17 y/o defendant subjects 9-16 y/o to sexual conduct, contains a mistake of age defense under 720 Ill. Comp. Stat. § 5/12-17(b); sexual conduct with 13-16 y/o, but requiring 5-year age gap, and contains the same mistake of age defense. | Class A Misdemeanor |

SPA-23

| | | | |
|---|---|---|---|
| | 750 Ill. Comp. Stat. § 5/12-16 (1993), aggravated criminal sexual abuse | No, ≥17 individual has sexual conduct with victim < 13; 13-16 victim plus force; < 17 y/o sexual conduct with <9 or 9-16 with force; victim 13-16 with 5-year age gap | Class 2 felony |
| Iowa | Iowa Code § 709.2 (1978), sexual abuse in the first degree | No, requires only sexual abuse plus serious injury | Class A felony |
| | Iowa Code § 709.3 (1984), sexual abuse in the second degree | No, requires sexual abuse with <12 y/o victim | Class B Felony |
| | Iowa Code § 709.4 (1994), sex abuse third degree | No, sex act with victim 12 or 13 y/o, but sex act is penetration or oral sex under § 709.102; 14 or 15 y/o victim requiring 5 year age gap | Class C felony |
| Kentucky | Ky. Rev. Stat. Ann. § 510.110(1974), sexual abuse in the first degree | No, sexual contact with victim < 12 y/o | Class D felony |

SPA-24

| | | | |
|---|---|---|---|
| | Ky. Rev. Stat. Ann. § 510.120 (1988), sexual abuse in the second degree | No, subjects another person who is less than 14 to sexual contact, but mistake of age defense provided under Ky. Rev. Stat. Ann § 510.030 | Class A misdemeanor |
| | Ky. Rev. Stat. Ann. § 510.130 (1974), sexual abuse in the second degree | No, sexual contact without consent, but affirmative defense if lack of consent only due to >14 y/o defendant with victim < 16, requiring 5 year age gap | Class B misdemeanor |
| Maine | Me. Stat. Tit. 17-A, § 254 (1995), Sexual Abuse of Minors | No, 19+ subjects 14-16 y/o victim to sexual act, requiring 5 year age gap | Class D Crime (if 5-10-year age gap) Class C Crime (if >10 year-age gap) |
| Missouri | Mo. Rev. Stat. § 566.100 (1995), sexual abuse | No, requires forcible compulsion | Class B felony (if less than 14); Class C felony |
| New York | N.Y. Penal Law § 130.70 (1988), aggravated sexual abuse in the first degree | No, penetration with victim <11 | Class B felony |

SPA-25

| | | | |
|---|---|---|---|
| | N.Y. Penal Law § 130.65 (1987), sexual abuse in the first degree | No, sexual contact with victim <11 | Class D felony |
| | N.Y. Penal Law § 130.60 (1987), sexual abuse in the second degree | Yes, ≥16 defendant subjects <14 y/o victim to sexual contact | Class A misdemeanor |
| | N.Y. Penal Law § 130.55 (1965) Sexual abuse in the third degree (1987) | No, sexual contact with <17, but requires consent in fact and 5 year age gap | Class B misdemeanor |
| Oregon | Or. Rev. Stat. § 163.427 (1995), sexual abuse in the first degree | Possibly, sexual contact and victim is <14 | Class B felony |
| | Or. Rev. Stat. § 163.425 (1991), sexual abuse in the second degree | No, intercourse or penetration, requires lack of consent in fact | Class C felony |
| | Or. Rev. Stat. § 163.415 (1995), sexual abuse in the third degree | Possibly, sexual contact with <18 | Class A misdemeanor |

SPA-26

| Pennsylvania | 18 Pa. Const. Stat. § 6312 (1995), sexual abuse of children | No, requires photographing, videotaping, filming or sexual acts with someone <18, or disseminating media depicting these acts | Felony |
|---|---|---|---|
| Utah | Utah Code Ann. § 76-5-404.1 (1996). Sexual abuse of child -- Aggravated sexual abuse of child | Possibly, "taking indecent liberties" with victim < 14[1] | Second degree felony |
| West Virginia | W. Va. Code Ann. § 61-8B-7, sexual abuse in the first degree (1984) | No, Defendant ≤ 14 y/o subjects <11 victim to sexual contact | Felony |
| | W. Va. Code Ann. § 61-8B-8 (1984), sexual abuse in the second degree | No, sexual contact with victim who is "mentally defective or mentally incapacitated" | Misdemeanor |

[1] "Indecent liberties" under Utah law may be narrower than New York's definition of sexual contact. See *J.L.S.*, 610 P.2d 1294, 1296 (Utah 1980) ("The momentary touching or grabbing of the clothed breasts of an adolescent girl by a seventeen-year old boy does not come within the phrase 'otherwise takes indecent liberties with another.' This phrase cannot be interpreted under the present statutory scheme as subsuming a mere offensive touching where the circumstances do not indicate conduct of sufficient gravity to be equated with the specific descriptions set forth in the statute.").

| | | | |
|---|---|---|---|
| | W. Va. Code Ann. § 61-8B-9 (1984), sexual abuse in the third degree (1994 | No, sexual contact with victim <16, but requires 4-year age gap | Misdemeanor |
| | W. Va. Code Ann. § 61-8D-5, Sexual abuse by a parent, guardian or custodian; parent, guardian or custodian allowing sexual abuse to be inflicted upon a child; displaying of sex organs by a parent, guardian or custodian; penalties | No, requires special relationship | Felony |
| Washington D.C. | D.C. Code § 22-4102 (1995), first degree sexual abuse | No, requires forcible compulsion | Felony |
| | D.C. Code § 22-4103 (1995), second degree sexual abuse | No, requires forcible compulsion or non-consent based on inability to consent (age not specified), sexual act requires penetration or oral sex, D.C. Code § 22-4101(8) (1995) | Felony |
| | D.C. Code § 22-4104 (1995) Third degree sexual abuse | No, requires forcible compulsion or drugging | Felony |

SPA-28

| | D.C. Code § 22-4105(1995), fourth degree sexual abuse | No, sexual contact requiring forcible compulsion or inability to consent, possibly could include lack of consent to due age, but definition of sexual contact requires contact with genitalia, anus, groin, breast, inner thigh, buttocks, D.C. Code § 22-4101(9) (1995) | Felony |
|---|---|---|---|